UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| CHRISTOPHER HATCHER individually on behalf of himself, and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> DAVID R. HINES, SHERIFF OF THE COUNTY OF HANOVER, VIRGINIA, *et al.* <br><br><br> Defendants. | CASE NO. <u>3:23-cv325-JAG</u> |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF CLASS CERTIFICATION PURSUANT TO FEDERAL RULE 23 AND FLSA CONDITIONAL CERTIFICATION

Plaintiffs, Christopher Hatcher on behalf of himself and others similarly situated (collectively "Plaintiffs"), file this Memorandum in Support of his Motion for Class Certification Pursuant to Federal Rule 23 and FLSA Conditional Certification.

## I.     Background

On May 15, 2023, Plaintiff, Christopher Hatcher filed the instant *hybrid* collective/class action complaint on behalf of himself and other similarly situated current and former Hanover County Sheriff's deputies, against Defendants Hanover County, Virginia ("County") and Sheriff David R. Hines ("Sheriff Hines" or the "Sheriff"), (collectively "Defendants"). *See* Complaint [ECF 1].[1] The gravamen of the Complaint is that the Defendants jointly employed the Plaintiffs but failed to pay them compensation for all hours worked. Specifically, Plaintiffs allege that

---

[1] Since the filing of the Complaint, three (3) additional individuals have opted-in to the case.

Sheriff's deputies with take-home cars are made to mark "on duty," a principal working activity, prior to the beginning of their scheduled shift, but that they are not paid for this time between "marking-on" and the scheduled start of their shift. Because of the interplay and different enforcement regimes between federal and Virginia Law, Plaintiffs seek conditional certification of their FLSA overtime claim (Count I) and class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure for their state law claims for "gap" and overtime pay (Count III - Va. Code § 9.1-700 *et seq.*, and Count IV - Va. Code § 40.1-29.2).[2] Plaintiffs voluntarily dismissed Count II of the Complaint and voluntarily dismissed Sheriff Hines from Count III. Defendants enjoyed the benefit of Deputies' labor but did not compensate them for their work during these periods of time that they were required to be marked "on duty" prior to the start of their shift. Compl. ¶ 55; Hatcher Decl. ¶¶ 22-24, DiLoreto Decl. ¶¶ 23-25, McGill Decl. ¶¶ 23-25, Dodge Decl. ¶¶ 22-24. (Plaintiff Chris Hatcher's Declaration is attached hereto as **Exhibit 1**; Plaintiff Jonathan McGill's Declaration is attached hereto as **Exhibit 2**; Plaintiff Matthew Dodge's Declaration is attached hereto as **Exhibit 3**; Plaintiff Steve DiLoreto's Declaration is attached hereto as **Exhibit 4**.)

Defendants mandated Plaintiff and similarly situated deputies to mark "on duty" upon leaving their homes if they lived within Hanover County limits in their Sheriff-issued take-home vehicles prior to the beginning of their shifts. Hatcher Decl. ¶¶ 13- 14, McGill Decl. ¶¶ 13-14. For deputies who lived outside of the County limits, some supervisors instructed them to mark "on duty" when they left their homes whereas other supervisors instructed them to mark "on duty" when they crossed over the Hanover County line, in their Sheriff-issued take-home

---

[2] Va. Code § 9.1-700 is referred to as the "Gap Time Statute," and Va. Code § 40.1-29.2, the Virginia Overtime Wage Act, is referred to as "VOWA".

vehicles prior to the beginning of their shifts. DiLoreto Decl. ¶¶ 13-14, Dodge Decl. ¶¶ 13-14. Defendants trained Sheriff's deputies on how and when to properly communicate with dispatch as part of their law enforcement duties. Hatcher Decl. ¶¶ 11-12, 16-18, Dodge Decl. ¶¶ 11-12, 15-18, McGill Decl. ¶¶ 11-12, 15-18, DiLoreto Decl. ¶¶ 11-12, 16-18.  Defendants implemented policies such as when, and when not, to mark "on duty" from one's take-home police car. Hatcher Decl. ¶¶ 10-21, 26, 28, 30-37, McGill Decl. ¶¶ 10-21, 26, 28, 30-37, Dodge Decl. ¶¶ 10-21, 26, 28, 30-37, DiLoreto Decl. ¶¶ 10-22, 26, 28, 30-37. Generally, deputies in patrol or investigations were required to mark "on duty" prior to the start of their scheduled shifts but were not compensated for this time. Compl. ¶ 25; Hatcher Decl. ¶¶ 11, 22-24, McGill Decl. ¶¶ 11, 22-24, Dodge Decl. ¶¶ 11, 22-24, DiLoreto Decl. ¶¶ 11, 23-25. Additionally, the Defendants subjected deputies who were specifically assigned to tactical field force and search and rescue units to the same policy. Dodge Decl. ¶¶ 11, 22-24. Sheriff's Deputies at the rank of Lieutenant and below are paid hourly under the County's compensation plan and are therefore non-exempt from overtime under the FLSA. Compl. ¶ 22. Plaintiff Hatcher was regularly "on duty" for approximately forty-five (45) minutes to one (1) hour prior to his shift beginning. Hatcher Decl. ¶ 27. Plaintiff McGill was regularly "on duty" for approximately fifteen (15) to twenty (20) minutes prior to his shift beginning. McGill Decl. ¶ 26. Plaintiff Dodge was regularly "on duty" for approximately thirty (30) to forty (40) minutes prior to his shift beginning. Dodge Decl. ¶ 26. Plaintiff DiLoreto was regularly "on duty" for approximately twenty-five (25) to thirty (30) minutes prior to his shift beginning. DiLoreto Decl. ¶ 27. Yet, they were not compensated for this time, despite departmental requirements that they be marked "on duty". Compl. ¶ 51; Hatcher Decl. ¶ 24-25, Dodge Decl. ¶¶ 23-24, McGill Decl. ¶¶ 23-24, DiLoreto Decl. ¶¶ 24-25.  As a result of the Defendants' improper policy of not paying Sheriff's Deputies for "on duty" time,

3

Hatcher, McGill, Dodge and similarly situated Sheriff's Deputies regularly and consistently worked, and/or were in "paid status" as defined by Va. Code § 9.1-703, for well over their regularly scheduled work hours without receiving overtime compensation for such "on duty" hours. Compl. ¶ 53. Similarly, the same conduct also resulted in Sheriff's deputies not receiving overtime compensation as mandated by VOWA[3] and the FLSA.

The Court ordered limited discovery for purposes of determining the individual members in the potential classes for Counts II, III, and IV. *See* ECF No. 32.

Plaintiff seeks collective and class certification of identical classes based on the same alleged conduct. In fact, save for the potential for some putative Plaintiffs to have been employed during the relevant time period for the FLSA collective action claim, but not for one of the state law class action claims, the putative collective and class will entirely overlap. Given this near complete sameness, Plaintiffs submit that class and conditional (collective) certification should be assessed and, ultimately approved, at the same time. Indeed, it is hard to envision a scenario where a collective exists, and a class does not, or vice versa.

## II.    <u>Statement of Facts</u>

The Hanover County Sheriff's Office is run by the Sheriff and is the primary law enforcement agency for its co-Defendant, the County of Hanover, Virginia. The Sheriff's office is comprised of Sheriff's deputies and various clerical, administrative, and management personnel. It employs over two hundred and seventy-five (275) individuals, including approximately two hundred and fifty (250) sworn law enforcement officers. Compl. at ¶ 9. The Sheriff and the County share administrative, dispatch, and personnel and services. Hatcher Decl.

---

[3] Plaintiffs bring their VOWA claim against the Sheriff for the period of July 1, 2021- June 30, 2022, during which timeframe sovereign immunity was expressly waived.

¶¶ 4-5, McGill Decl. ¶¶ 4-5, Dodge Decl. ¶¶ 4-5, DiLoreto Decl. ¶¶ 4-5. The Sheriff's payroll is administered by the County. The Sheriff's pay and time system, Kronos, is administered by the County. The Sheriff's dispatch system is owned and operated and administered by the County. Hatcher Decl. ¶ 6, McGill Decl. ¶ 6, Dodge Decl. ¶ 6, DiLoreto ¶ 6. The Sheriff's deputies benefits are received and administered through the County. Hatcher Decl. ¶ 4, McGill Decl. ¶ 4, Dodge Decl. ¶ 4, DiLoreto ¶ 4. Non-exempt Sheriff's deputies are paid on an hourly basis using a 28-day/171-hour FLSA cycle. However, deputies are typically scheduled to work between 136.5 and 160 hours during that time frame. *See* Compl. at ¶¶ 40-44. This means that for purposes of FLSA § 207(k), and by extension VOWA, Defendants are required to pay deputies overtime compensation for all hours worked over 171 in each 28-day cycle, but any obligation for the County to pay overtime for hours worked between deputies regularly scheduled hours and 171 hours springs exclusively from the Gap Time Statute.

Plaintiffs are current and former deputies employed by Defendants within the three years preceding May 15, 2020. Among other duties, Plaintiffs' primary duties are to maintain the peace, protect Hanover's citizens, and to investigate and address crimes and citizen complaints. Compl. at ¶ 29. Plaintiffs and putative plaintiffs are "similarly situated" in their job duties and in the manner of compensation paid, or not paid, to all nonexempt deputies in patrol or investigations assigned take-home vehicles who were employed by Defendants any time from May 15, 2020 to the present.

Plaintiffs have worked/currently work as deputies for Defendant for varying lengths of time, with some Plaintiffs and Putative Plaintiffs having worked for Defendants for many, many years. Defendants pay, or paid, all of the Plaintiffs on an hourly basis which is/was uniformly administered and essentially identical throughout the Sheriff's office. Compl. ¶ 38.

Defendants pay deputies according to their shifts as listed in the Kronos system. *See* Rule 30(b)(6) Deposition of Sheriff Hines (Gregory Six designee) at 49:21-50:21, attached hereto as **Exhibit 5** (hereinafter "Hines Dep.").[4] However, "being on the radio has nothing to do with compensable time. Kronos and dispatch are completely separate. They have nothing to do with each other." Hines Dep. at 85:21-85:24. Rather than being paid for time spent in a marked-on capacity, Sheriff's deputies are paid for their regular shifts as well as "any time that you take a law enforcement action outside of your regularly scheduled shift." Hines Dep. at 49:12-49:14. Sheriff Hines further avers that overtime will be paid for any hours worked in a cycle beyond that schedule. Hines Dep. at 52:7-52:11. Sheriff Hines does not pay based on mark-on time and testified to its position that marking-on has little significance and is irrelevant for timekeeping and compensation purposes. *See* Hines Dep. at 7:2-7:18. Finally, the Sheriff testified that with respect to deputies with take-home cares "[w]e *require* people to mark-on the radio for the shift that they are coming to work" (emphasis added), but also that they "have no policy" for "marking-on." *See* Hines Dep. at 14:12-15:8. While the Sheriff does require deputies to mark-on before a shift, it has no requirement as to when they must mark-off, though it does appear that most officers mark-off as soon as their shift ends. *See* Hines Dep. at 62:13-63:19.

Marking-on is required of Patrol deputies but is not required of Court deputies. *See* Hines Dep. at 43:22- 44:12. Plaintiffs confirm that marking on duty was a requirement of the job for deputies in patrol, investigations or similar units including search and rescue and tactical field force. Hatcher Decl. ¶ 28, McGill Decl. ¶ 27, Dodge Decl. ¶ 27, DiLoreto Decl. ¶ 28. Marking-on can be accomplished in several different ways including the radio, Kronos, computer, mobile

---

[4] Capt. Six also testified in his personal capacity regarding topics not designated in the Rule 30(b)(6) notice, so referring to this transcript herein as the "Hines Dep." is not intended to alter this in any way.

CAD, MDT message and telephone. *See* Hines Dep. at 16:22-19:1. Nevertheless, deputies are trained to us their radio as their primary means of marking-on (*See* Hines Dep. at 19:9-19:16) and marking-on through the radio is "notifying dispatch that you're on the radio." Hines Dep. at 20:4-20:6 and 21:10-21:11. While the Sheriff denies any specific policy regarding marking-on prior to a scheduled shift, he does nevertheless acknowledge that "[w]e just have a practice that you do it before your scheduled shift or your scheduled time of work." Hines Dep. at 24:16-24:18. During field training, and while at the academy, deputies are informed of the Sheriff's mark-on practice. Hines Dep. at 26:6-26:13, Hatcher Decl. ¶ 12, Dodge Decl. ¶ 12, McGill Decl. ¶ 12, DiLoreto ¶ 12.

The Sheriff only assigns take-home cars to deputies who live within ten air miles of Hanover County. *See* Hines Dep. at 33:14-33:20. The Sheriff retains the ability to assign take-home cars to deputies not meeting this criterion. *See* Hines Dep. at 34:19-34:22. For the most part, take-home vehicles are "hardwired to be on when you turn the car on" and it is the intention of the Sheriff for deputies to be listening to the radio as soon as the car is on. *See* Hines Dep. at 40:12-40:23. There is no policy requiring the radio be on but it is a "general practice" *See* Hines Dep. at 41:7-41:11. Deputies who are not marked-on are generally deemed not available for dispatch. *See* Hines Dep. at 66:14-66:20. There is no written policy to this effect, but the Sheriff contends that such a policy can be inferred. *See* Hines Dep. at 92:10-93:4. Even though a marked-on deputy is available for dispatch, the Sheriff avers it is "incredibly rare" for a deputy to be dispatched prior to their shift. As with the pre-shift mark-on requirement, there is no written policy to this effect, only a practice. *See* Hines Dep. at 67:1-67:8. The Sheriff's Rule 30(b)(6) designee further testified that it is the County who runs and assigns deputy dispatch and claimed that the County knows not to assign deputies prior to the start of their shift. *See* Hines

Dep. at 67:11-69:14.

With few exceptions, take-home vehicles are not to be used in off-duty capacities or for off-duty purposes. The Sheriff's designee testified that the few allowable off-duty or personal uses for a take-home vehicle include getting the vehicle cleaned or serviced, or going to the "Gym, haircut, laundry, sheriff's office sponsored event." (*See* Hines Dep. at 59:17-60:9). Deputies were directed <u>not</u> to mark-on duty or to notify dispatch when driving their take-home vehicles for any of these permissible off-duty purposes. Hatcher Decl. ¶¶ 35-36, McGill Decl. ¶¶ 33-34, Dodge Decl. ¶¶ 33-34, DiLoreto Decl. ¶¶ 34-35.

The Sheriff's policies for marking on duty, or not marking on-duty, from one's take-home vehicle were uniformly applicable to deputies in investigations and patrol. Hatcher Decl. ¶¶ 10-11, 32-36, Dodge Decl. ¶¶ 10, 11, 31-35, McGill Decl. ¶¶ 10, 11, 31-35, DiLoreto Decl. ¶¶ 10, 11, 32-36. It was Defendants' policy not to pay deputies for the time they were marked on duty prior to the start of their shifts. Hatcher Decl. ¶¶ 23, Dodge Decl. ¶ 23, McGill Decl. ¶¶ 23, DiLoreto Decl. ¶¶ 24.

### III. <u>Argument</u>

The Defendants have provided the names of between 217 and 251 individuals who worked as patrol or investigation deputies in ranks of Lieutenant or below within the three years preceding the filing of this complaint and who were assigned take-home cars, who are eligible to receive the relief requested in this action who have not yet joined any portion of the suit. All of these similarly situated deputies have been identified by the Defendant, and they are appropriate recipients of FLSA notice and are also appropriate Rule 23 class members. These individuals performed duties identical to the Plaintiffs and were subject to the same allegedly violative policies and practices and should have the opportunity to recover should Plaintiffs ultimately be

8

successful in this litigation. To be sure, Defendant has raised defenses as to the merits of Plaintiffs' claims, and those defenses deserve adjudication, but there can be no doubt that an easily identifiable class exists with respect the alleged violations of the Virginia Gap Time Statute and VOWA, and an easily identifiable collective exists with respect to alleged violations of the FLSA.

### A. PLAINTIFFS' MOTION FOR CLASS CERTIFICATION SHOULD BE GRANTED

Plaintiffs move for class certification for their Gap Time Statute and VOWA claims against Defendants. Plaintiff seeks certification of the following class:

> All current and former Hanover County Sheriff's Deputies employed by Defendants at the rank of Lieutenant or below in a patrol, investigations, or similar unit, who were issued take-home patrol cars and were required to "mark-on duty" ~~as soon as they began driving~~ <u>prior to the start of their scheduled shift(s), during any time within the liability period since May 15, 2020</u>.[5]

For the reasons set forth below, the proposed class is sufficiently numerous, the class representative's claims are typical of those other class members, and common questions of law and fact predominate. As a result, Plaintiffs' motion for class certification should be granted.

### i. Standard for Granting Class Certification

The Supreme Court has expressed its approval of class actions, noting that "[c]lass actions serve an important function in our system of civil justice." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981). The Fourth Circuit has further noted that "certification as a class action serves important public purposes." *Gunnells v. Healthplan Services, Inc.*, 348 F.3d 417, 424 (4th

---

[5] The strikethrough and underline language reflect Plaintiffs' slightly revised proposed class definition given that the compensation sought is the difference between the time each deputy marked on duty and the start of his/her scheduled shift. Also, take-home cars were assigned to deputies who lived outside of the County, but those deputies were not required to mark on duty until crossing the county line, as opposed to when they began driving. Lastly, the relevant time period (three years before filing) should be included in the definition.

Cir. 2003). Accordingly, "any doubts regarding class certification should be resolved in favor of certification." *In re Bearingpoint, Inc. SES. Litigation*, 232 F.R.D. 534, 537 (E.D. Va. 2006)[6] This accords with longstanding Fourth Circuit law that federal courts should "give Rule 23 a liberal rather than a restrictive construction, adopting a standard of flexibility and application which will in a particular case serve the ends of justice for the affected parties . . . [and] promote judicial efficiency". *Gunnells v. Healthplan Services, Inc.*, 348 F.3d at 424, quoting, *In re A.H. Robins,* 880 F.2d 709, 740 (4th Cir. 1989).

To be certifiable, a plaintiff must show that his action satisfies the four requirements of Fed.R.Civ.P. 23(a): numerosity, commonality, typicality, and adequacy; and that it satisfies at least one of the subsections of Fed.R.Civ.P. 23(b). *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997). However, the "requirements under Rule 23 should be given a liberal . . . construction." *Stewart v. Assoc's Consumer Discount Co.*, 183 F.R.D. 189, 194 (E.D. Pa. 1998).[7] Courts also have broad discretion in determining whether the elements of Rule 23(a) have been satisfied. *Reiter v. Sonotone Corp.,* 442 U.S. 330 (1979) (district courts are vested with broad power and discretion in matters of certification and management of class action).

The class certification decision is to be made based upon a determination of whether Rule 23's requirements are met, not based upon an inquiry into the merits of plaintiff's case. *Popoola, et al. v. MD-Individual Practice Association, Inc., et al.,* 230 F.R.D. 424 (M.D. 2005) (*citing, inter alia, Halverson v. Convenient Food Mart, Inc.,* 458 F.2d 927 (7th Cir. 1972) ("[I]n determining the propriety of a class action, the question is not whether the plaintiffs have stated a

---

[6] *See also* 3 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS §9:46 at 417 (4th ed. 2002) ("courts have concluded that when any doubt exists concerning the propriety of class certification, it should be resolved in favor of upholding the class").

[7] *See also* NEWBERG ON CLASS ACTIONS, §7:17 ("Rule 23 is generally required to be liberally construed").

cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 have been met")). To determine the merits of certifying a class, "the court may look outside the pleadings for the proof necessary for class certification." *Banyai v. Mazur*, 205 F.R.D. 160, 163 (S.D.N.Y. 2002) (*citing General Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982)). Once the court is satisfied that the requirements are met, certification is a matter of right. *United States Parole Commission v. Geraghty*, 445 U.S. 388, 408 (1980). In this case, Rule 23 is satisfied by the fact that the proposed class is composed of approximately 251 identically situated deputies, all working for the same employers, and subject to the same policies and practices seeking the same redress. Plaintiffs easily meet the requirements to certify a class under Rule 23(a) and (b)(3).

### ii. The Four Requirements of Rule 23(A) are Easily Met

#### a. The Class Is So Numerous That Joinder Is Impractical

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Impracticability "does not mean impossibility but only the difficulty or inconvenience of joining all members of the class." *Johnson v. City of Grants Pass*, 50 F.4th 787, 803 (9th Cir. 2022). Generally, if the number of class members exceeds 40, the numerosity requirement is met. *McLaurin v. Prestage Foods, Inc.* 271 F.R.D. 465 (E.D.N.C. 2010). *See also Brady v. Thurston Motor Lines,* 726 F.2d 136 (4th Cir. 1984) ("No specified number is needed to maintain a class action."); *Cypress v. Newport News General and Nonsectarian Hospital Association,* 375 F.2d 648 (4th Cir. 1967) (holding eighteen was enough to constitute a class). "[A] class of as few as twenty-five to thirty members raises a presumption that joinder would be impracticable." *Rodger v. Electronic Data Systems Corp.,* 160 F.R.D. 532 (E.D.N.C. 1995).

Here, the Class numbers well into the low hundreds. The list produced by the Defendants in response to the Court's Order on discovery contained the names of approximately 251 deputies.  All of the deputies contained within that list are putative class members as they were

11

patrol or investigations deputies, assigned take-home cars, and were subject to the Defendants'

practice of not paying for principal work activities (i.e., required marking-on duty) performed

prior to the start of a scheduled shift.  Common sense plainly suggests that it would be

impractical to join that many class members. Plaintiffs have easily satisfied the numerosity

requirement.

### b.  Questions of Law or Fact Are Common to the Class

Rule 23(a)(2) requires that "there are questions of law or fact common to the class."  The

commonality requirement "is not a high bar."  *Minter v. Wells Fargo Bank, N.A. et al.,* 274

F.R.D. 525 (M.D. 2011) and largely intertwined with the typicality factor.

> The commonality and typicality requirements of Rule 23(a) tend to merge. Both
> serve as guideposts for determining whether under the particular circumstances
> maintenance of a class action is economical and whether the named plaintiff's claim
> and the class claims are so interrelated that the interests of the class members will
> be fairly and adequately protected in their absence.

*General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 157 n.13 (1982).

"Rule 23(a) requires only that resolution of the common questions affect all or a

substantial number of the class members." *McLaurin, supra.* The commonality and typicality

requirements may be satisfied even if there are factual distinctions between the claims of the

named plaintiffs and those of other class members. *See Broussard v. Meineke Discount Muffler

Shops, Inc.*, 155 F.3d 331, 344 (4th Cir. 1998) ("We…do not suggest that the commonality and

typicality elements of Rule 23 require that members of the class have identical factual and legal

claims in all respects."). Commonality is not required on every question in the class action.

*DeBoer v. Melon Mortgage Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995).

In this case, there are numerous intertwined questions of law and fact common to the

class including:

- Defendants' policies and practices concerning pre-shift mark-on obligations

with respect to deputies assigned take-home vehicles;

- Whether marking-on constitutes a principal work activity for deputies assigned take-home vehicles;

- The benefit derived by Defendants from their current mark-on regime;

- The disparities between time spent by deputies assigned take-home vehicles in an on-duty capacity versus the amount of time for which they are compensated.

Plaintiffs contend that the above uniform matters all speak to the compensation due under both VOWA and the Gap Time Statute. "Wage claims involving system-wide practices or policies are appropriate for class treatment because establishing liability for one employee necessarily establishes liability for the entire class." *Garcia v. E.J. Amusements of N.H., Inc.*, 98 F. Supp. 3d 277, 286 (D. Mass. 2015). Class certification is "strongly supported" where, as here, the record indicates payment has been based on schedule to the exclusion of controverting records and evidence like the mark-on records. *See Ramirez v. Riverbay Corp.,* 39 F. Supp. 3d 354, 363 (S.D. N.Y. 2014). In *Ramirez*, Plaintiffs "allege[d] that [their employer] had a corporate policy of paying hourly employees according to their scheduled shifts even though the employees' payroll records indicated that they clocked in early or clocked out late…." *Id.* at 360.

### c. The Claims of The Named Plaintiff are Typical of The Claims Of The Class

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). Typicality is merely intended to align the interests of the class and class representatives to make sure the representatives will work to benefit the entire class. It is not necessary for the claims of the representatives and those of the class members to be factually identical *Lienhart v. Dryvit Systems Inc.,* 255 F.3d 138 (4th Cir. 2001). Courts have found that "even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong

13

similarity of legal theories." *Baby Neal v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994) (citing *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)). "[C]ases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement." *Stewart v. Abraham*, 275 F.3d 220, 227 (3rd Cir. 2001) (citing *Baby Neal*).

Although there may be factual differences among the individual class members in terms of the quantum or regularity of damages, the class members' claims arise from the same course of conduct, rely on the same legal theory, and may be proven using the same evidence. Plaintiffs satisfy the typicality requirement because their "allegations are not based on conduct unique [to them]" *Dornberger v. Metropolitan Life Insurance Co.,* 182 F.R.D. 72 (S.D.N.Y. 1998). That common course of conduct is crucial. The "mere existence of individualized factual questions with respect to the class representative's claim will not bar class certification." *Difelice v. U.S. Airways, Inc.*, No. 1:04cv889, 2006 U.S. Dist. LEXIS 15711, at *21 (E.D. Va. Mar. 22, 2006). "'Factual differences among the class members' cases will not preclude class certification if the class members share the same legal theory'." *Lutz v. Int'l Ass'n of Machinists & Aerospace Workers, No. 00-148-A,*, 2000 U.S. Dist. LEXIS 18971, at *21 n. 8 (E.D. Va. Oct. 12, 2000). Factual "variances in the amount of damages claimed, or differences in the availability of certain defenses against the representative plaintiffs, does not prohibit a finding of typicality as long as the claims are based on the same legal or remedial theory." *Jeffreys v. Communs. Workers of Am.*, 212 F.R.D. 320, 322 (E.D. Va. 2003).

Plaintiffs and other class members were employed by Defendants as nonexempt deputies and all had their paid time tracked, or not tracked, through the exact same mechanisms, shaped by the exact same policies.  Further, all class members were subject to the same practice of being

required to mark on duty prior to the commencement of their paid shift. Hines Dep. at 14:12-15:8.Plaintiff possesses "the same interests and suffer[ed] the same injury" as other members of the proposed class in attempting to recoup back wages and damages associated with unpaid as a result of Defendants' timekeeping/overtime policies and practices. *See East Texas Motor Freight System, Inc. v. Rodriquez*, 431 U.S. 395 (1977).

### d. The Named Plaintiffs Will Fairly and Adequately Represent the Interests of the Class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." The purpose of the adequacy requirement is to ensure that there are no "conflicts of interest between named parties and the class they seek to represent." *Amchem, supra*.[8] The burden is on the party opposing the class (presumably, the Defendants) to demonstrate that representation will be inadequate. *Lewis v. Curtis*, 671 F.2d 779 (3rd Cir.), *cert. denied,* 459 U.S. 880 (1982). There are no conflicts or antagonistic interests of the Plaintiff toward the interests of absent class members. Plaintiff has the same interest as all other putative class members: recovering unpaid gap time and overtime unlawfully withheld by Defendants.

Plaintiffs' counsel are experienced trial attorneys with considerable experience in litigating wage and hour collective and class actions and have considerable depth of experience in successfully representing large groups of law enforcement officers seeking to enforce the rights and remedies afforded them by the Virginia Gap Time Statute as well as VOWA.

---

[8] Adequacy of representation under this section has traditionally entailed a two-pronged inquiry into whether: (i) "the named plaintiffs' claims are not antagonistic to the class," and (ii) "the attorneys for the class representatives are experienced and qualified to prosecute the claims on behalf of the entire class." *Baby Neal v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994). However, with the 2003 amendments to Fed.R.Civ.P. 23, the second prong is now addressed under new section 23(g). *Noble v. 93 University Place Corp.*, 224 F.R.D. 330, 339 n. 74 (S.D.N.Y. 2004).

Plaintiffs and their counsel are not only experienced, but also committed to this case on behalf of all affected. Plaintiffs and their counsel will fairly and adequately represent the interests of the class.[9]

### iii. The Requirements of Rule 23(b) are Satisfied

As noted above, to be certifiable, Plaintiffs' claims need meet only one of the requirements of Rule 23(b). As specified in the introduction to this brief, Plaintiffs seek certification of their claims for monetary relief under Rule 23(b)(3).

### a. The Claims for Monetary Relief Meet the Requirements for 23(b)(3) Certification

When certifying a class under 23(b)(3), a plaintiff must establish that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

The U.S. Supreme Court has had occasion to speak to the importance commonality and has found, in the Title VII context, that "[Plaintiffs'] claims must depend upon a common contention -- for example, the assertion of discriminatory bias on the part of the same supervisor. That common contention, moreover, must be of such a nature that it is capable of classwide resolution--which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

The focus at the class certification stage is the identification of questions *common* to the putative class. At the class certification stage Plaintiffs have no merits burden to prove that they will ultimately prevail at the later merits stages. *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,

---

[9] See Declaration of Zev Antell, attached as **Exhibit 6**.

133 S. Ct. 1184, 185 L. Ed. 2d 308 (2013) (affirming Rule 23(b)(3) certification of securities fraud class). *Amgen*, a 2013 Rule 23(b)(3) decision decided after *Wal-Mart v. Dukes*, directly speaks to this point of the Rule 23 identification of common *questions* versus the later merits proof issues.

Reaffirming the importance of identifying common questions at the Rule 23 certification stage on a Rule 23(b)(3) application, the *Amgen* Court wrote, "[t]o obtain certification of a class action for money damages under Rule 23(b)(3), a plaintiff must satisfy Rule 23(a)'s above-mentioned prerequisites of numerosity, commonality, typicality, and adequacy of representation, and must also establish that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." 133 S. Ct. at 1191 (internal citations omitted).

However, in *Amgen*, the Supreme Court made clear that, in meeting the 23(b)(3) certification requirement, Plaintiffs must only show that common questions of fact and law predominate over individual issues. "Therefore, under the plain language of Rule 23(b)(3), plaintiffs are not required to prove materiality at the class-certification stage. In other words, they need not, at that threshold, prove that the predominating question will be answered in their favor." 133 S. Ct. at 195.

As shown *supra*, there can be no question that Plaintiff deputies here seek to challenge Defendants' department-wide practices as violating the Gap Time Statute and VOWA, resulting in under- and non-payment of gap and overtime wages. Plaintiff has demonstrated the predominance of common questions for Rule 23(b)(3) purposes and meets the superiority requirements of 23(b)(3).

**1. Common Questions of Law and Fact Predominate**

To meet the predominance requirement, the Court must determine whether the efficiency of a class resolution of common issues is outweighed by individual issues. The mere existence of individual issues will not of itself defeat class certification. The common questions of fact and law in this litigation are centered around Defendant's uniform timekeeping and payment practices and policies. Under these circumstances, common questions of fact predominate.

The predominance requirement is plainly met with respect to Plaintiffs' claims for monetary relief. The central issues underlying all of Plaintiffs' claims are the same; whether Defendants practice of failing to compensate for time spent marked-on and on duty prior to the start of a scheduled shift serve to repress the number of hours reported and paid for. This issue and all attendant issues are susceptible to common proof because the Sheriff and the County have uniform records and systems, and have acted, and compensated, under uniform practices and procedures.

**2. A Class Action Is a Superior Method for The Fair and Efficient Adjudication of This Controversy**

Rule 23(b)(3) requires that a "class action [be] superior to other available methods for the fair and efficient adjudication of the controversy." In determining whether a class action is superior, the Court looks to four specific favors to evaluate predominance and superiority:

> (i) the strength of the individual class members' interest in controlling the prosecution and defense of a separate action, (ii) the extent and nature of existing litigation already begun by or against class members, (iii) the desirability or undesirability of concentrating the litigation in the single forum selected by the class plaintiffs, and (iv) the likely difficulties in managing the class action.

*Lloyd v. General Motors Corp.,* 266 F.R.D. 98 (M.D. 2010) All of these factors counsel in favor of class certification here.

Regarding the first and second factors, no other lawsuits are currently pending against

Defendants contesting the legality of the effect(s) of the compensation and operational practices at issue as they are currently implemented, making class treatment particularly appropriate.

The Richmond Division of the United States District Court for the Eastern District of Virginia provides an obvious forum because this action is essentially 100% confined to parties and facts involving Hanover County. Individual adjudications could substantially occupy the Court's docket and there is no reason to further burden the Court or the parties when one adjudication will simply and efficiently satisfy the claims of dozens. The Court must seek to effectuate the policy in favor of having all similar cases "disposed of where feasible, in a single lawsuit." *Gulf Oil Co. v. Bernard*, supra.

Furthermore, the amounts of money at stake for the majority of individual class members may be too small to support individual litigation. *See id.* (noting that small amounts of damages counsels in favor of finding class action superior because "a class action facilitates spreading of the litigation costs among the numerous injured parties"). This class action will give potentially 217-251 deputies an opportunity to resolve their claims in a single lawsuit and it is far superior to the possibility of dozens and dozens of individual lawsuits challenging the same practices and procedures. *Weeks v. Bareco Oil Company*, 125 F.2d 84 (7th Cir. 1941) ("[t]o permit defendants to contest liability with each claimant in a single, separate suit, would in many cases give defendants an advantage that would almost be equivalent to closing the door of justice to all small claimants. This is what we think the class suit practice was designed to prevent.").

Finally, this case presents no manageability issues. It focuses on core questions of fact and law, which will resolve liability for the entire class, and a predominance of common issues strongly supports manageability. While this class action would potentially involve over two hundred class members, it is also readily manageable, particularly when compared to classes in

other larger and more complicated cases that have been managed successfully through settlement or trial. *See Duhaime v. John Hancock Mutual Life Insurance Co.,* 177 F.R.D. 54 (D. Mass. 1997). Given the size and scope of this class, joinder and intervention are not possible or superior alternatives. Additionally, the claims in this action are particularly suited for class action treatment because all nonexempt patrol/investigations Sheriff's deputies with take-home vehicles have been similarly affected and Defendants possesses all of the information concerning the identity of the members of the class and precise information which can be distilled into 'how' and to 'what extent' the members of the class have been damaged (assuming liability is found). There will be no need for mini-trials, because if the Court issues a finding of liability against Defendants, payment amounts can be easily ascertained through data already available and damages models already being constructed by the Plaintiffs.

For all of these reasons, a class action is the superior means to resolve Plaintiffs' Gap Time Statute claims.

**iv.**    **<u>Proposed Class Counsel Satisfy the Requirements of Rule 23(g)</u>**

Rule 23(g) requires a court to appoint class counsel when it certifies a class. Class counsel must "fairly and adequately represent the interests of the class." Fed.R.Civ.P. 23(g)(4). Factors to be considered include "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class". Fed.R.Civ.P. 23(g)(1)(A); *Pender v. Bank of America Corp.,* 269 F.R.D. 589 (W.D.N.C. 2010).

Here, proposed class counsel (Butler Curwood, PLC of Richmond, Virginia) has done extensive work in identifying and investigating the claims in this action. They have conducted

independent research regarding the merits of the claims, drafted the complaint, propounded

extensive discovery, reviewed internal documents provided by proposed class action plaintiffs

and developed a model capable of determining damages within a reasonable degree of certainty.

Counsel have expended many hours prosecuting this case to date and are more than prepared to

expend the additional time and expense required to bring this case to trial.

Furthermore, proposed class counsel has extensive experience prosecuting class actions

and similar multi-plaintiff litigation (Including notable experience in representing Virginia law

enforcement officers pursuing unpaid overtime), have been designated class and collective

counsel in other matters, are fully knowledgeable in class action and employment law, and have

litigated, and settled, numerous cases.  The time and effort proposed class counsel have already

expended in the pleading and discovery stages of this case demonstrate that they have and will

commit sufficient resources to represent the Class. For these reasons, proposed class counsel

should be approved.

**B.**      **PLAINTIFFS' MOTION FOR CONDITIONAL (COLLECTIVE ACTION) CERTIFICATION SHOULD BE GRANTED**

Pursuant to 29 U.S.C. §216(b), Plaintiff moves for conditional certification of his claims

against the Defendants. Plaintiff seeks certification of the following collective:

> All current and former Hanover County Sheriff's Deputies employed by Defendants at the rank of Lieutenant or below in a patrol, investigations, or similar unit, who were issued take-home patrol cars and were required to "mark-on duty" ~~as soon as they began driving~~ <u>prior to the start of their scheduled shift(s), during any time within the liability period since May 15, 2020</u>.

**i.**    **Legal Standard For Section 216(b) Notice to Putative Collective Members**

The FLSA's "collective action" provision permits one or more employees to bring an

action for overtime compensation on "behalf of himself or themselves and other employees

similarly situated." 29 U.S.C. § 216(b). The standard for certification at this stage is a lenient one to effectuate the broad remedial purpose of the FLSA. *See Hernandez v. KBR Servs., LLC*, Civil Action No. 3:22-cv-530-HEH, 2023 U.S. Dist. LEXIS 140795*21 (E.D. Va. Aug. 11, 2023); *Edwards v. Optima Health Plan*, 2:20CV192 (RCY), 2021 WL 1174724, at *3 (E.D. Va. Mar. 29, 2021)**;** *McNeil v. Faneuil, Inc.*, No. 4:15CV81, 2016 WL 11673838, at *3 (E.D. Va. Aug. 3, 2016); *Choimbol v. Fairfield Resorts, Inc.*, 475 F.Supp.2d 557, 562 (E.D.Va.2006); M*endoza*, 2021 WL 2435873, at *3; *Andreana v. Virginia Beach City Pub. Sch.*, 2:17-CV-574, 2018 WL 2144151, at *2 (E.D. Va. May 9, 2018); *Yerby*, 2020 WL 602268, at *3. Indeed, Section 216(b) only requires an employee to show that he is suing his employer for himself, individually and on behalf of other employees "similarly situated." 29 U.S.C. § 216(b); *see also Choimbol*, 475 F.Supp.2d at 562. The Plaintiff's claims need not be identical to the potential opt-ins, they need only be similar. *See Hernandez v. KBR Servs.*, 2023 U.S. Dist. LEXIS 140795 *14; *Lee v. Solar Energy World, LLC*, CV RDB-19-1993, 2021 WL 915287, at *3 (D. Md. Mar. 10, 2021); *Privette v. Waste Pro of N. Carolina, Inc.*, 2:19-CV-3221-DCN, 2020 WL 1892167, at *4 (D.S.C. Apr. 16, 2020).

Courts throughout the Fourth Circuit apply a two-step approach to determine whether plaintiffs are "similarly situated" to the potential plaintiffs. *See Hernandez v. KBR Servs.*, 2023 U.S. Dist. LEXIS 140795 *18-19; *Choimbol*, 475 F.Supp.2d at 562 (endorsing two-stage approach); *Purdham v. Fairfax County Pub. Sch.*, 629 F. Supp. 2d 544, 547 (E.D. Va. 2009) (same); *Lee*, 2021 WL 915287, at *3 (same); *McNeil v. Faneuil, Inc.*, 4:15CV81, 2016 WL 11673838, at *3 (E.D. Va. Aug. 3, 2016) (same); M*endoza v. Baird Drywall & Acoustic, Inc.*, 7:19-CV-882, 2021 WL 2435873, at *3 (W.D. Va. June 15, 2021) (same); *Spencer v. Macado's, Inc.*, No. 6:18-cv-00005, 2019 WL 4739691, at *2 (W.D. Va. Sept. 27, 2019) (same); *Yerby v.*

*City of Richmond, Virginia*, 3:19-CV-393, 2020 WL 602268, at *3 (E.D. Va. Feb. 7, 2020) (same). The two steps or stages consist of the "notice" stage and the "decertification" stage. *Yerby*, 2020 WL 602268 at *3. Notably, this Court's use of the two-step procedure for certification was reaffirmed recently when the Fourth Circuit refused to hear an interlocutory appeal suggesting that it adopt the Fifth Circuit's diverging analysis set out in *Swales v. KLLM Transp. Servs., LLC*, 985 F.3d 430 (5th Cir. 2021). *See Maximus, Inc. v. Thomas*, 2022 U.S. App. LEXIS 21385 (4th Cir. Aug. 2, 2022).

The first step, known as the notice step, mandates "nothing more than substantial allegations that the putative class members[s] were together victims of a single decision, policy, or plan." *Choimbol,* 475 F. Supp. 2d at 562 (quoting *Sperling v. Hoffman–La Roche, Inc.*, 118 F.R.D. 392, 400–02 (D.N.J.1988), aff'd in part, 862 F.2d 439, 444 (3d Cir.1988), aff'd, 494 U.S. 165 (1988)); *see also* M*endoza*, 2021 WL 2435873 at *3; *Meeker v. Med. Transport, LLC*, No. 2:14-cv-426, 2015 WL 1518919, at *3 (E.D. Va. Apr. 1, 2015); *McNeil,* 2016 WL 11673838 at *3; *Lee*, 2021 WL 915287 at *3; *Andreana*, 2018 WL 2144151 at *3; *Gagliastre v. Capt. George's Seafood Rest., LP*, 2:17CV379, 2018 WL 9848232, at *2 (E.D. Va. Mar. 13, 2018), modified on clarification, 2:17CV379, 2018 WL 9848233 (E.D. Va. June 14, 2018); *Flores v. Unity Disposal & Recycling, LLC*, 2015 WL 1523018, at *4 (D. Md. Apr. 2, 2015); *Yerby*, 2020 WL 602268, at *3. At the notice stage, all the court decides is whether certification is appropriate for the purpose of sending notice and consent forms to potential plaintiffs to allow them to opt-in to the lawsuit.[10] *See McNeil*, 2016 WL 11673838 at *3; *Spencer*, 2019 WL 4739691 at *2

---

[10] *See Ramirez v. T&D Custom Fences & Decks, LLC*, 7:20-CV-144-BO, 2021 WL 797901, at *1 (E.D.N.C. Mar. 2, 2021); *Edwards*, 2021 WL 1174724 at *4; *Choimbol*, 475 F. Supp. 2d at 563; *Cockman v. Assignment Desk Works LLC*, 2:19-CV-3082-BHH, 2021 WL 1738509, at *4 (D.S.C. May 3, 2021).

(same); *Edwards*, 2021 WL 1174724 at *3 (same); M*endoza*, 2021 WL 2435873 at *3; *Hargrove v. Ryla Teleservices, Inc.*, 2:11CV344, 2012 WL 489216, at *2 (E.D. Va. Jan. 3, 2012), report and recommendation adopted, 2:11CV344, 2012 WL 463442 (E.D. Va. Feb. 13, 2012).

When making the determination at the first "notice" stage, courts do not reach the merits of the case, focusing instead on whether the complaint and other allegations show that potential class members are "similarly situated."[11] *See* M*endoza,* 2021 WL 2435873 at *3 ("This initial inquiry proceeds under a 'fairly lenient standard' and requires only 'minimal evidence'…such as factual evidence by affidavits or other means…") (internal quotation and citation omitted). Courts do not weigh evidence, resolve factual disputes, or rule on the merits of Plaintiffs' claims, nor are they an appropriate inquiry for purposes of conditional certification. *See McNeil,* 2016 WL 11673838 at *3; *Spencer,* 2019 WL 4739691 at *2 (same); *Edwards*, 2021 WL 1174724 at *3 (same); M*endoza*, 2021 WL 2435873 at *3; *Hargrove*, 2012 WL 489216, at *2.

At this stage, a court need only consider the substantial allegations of the complaint along with any supporting affidavits or declarations. *See e.g.*, *Hernandez v. KBR Servs.*, 2023 U.S. Dist. LEXIS 140795 *21-22 (Accepting plaintiff employee declarations as the requisite "modest factual showing" necessary to grant conditional certification); *Marroquin v. Canales*, 236 F.R.D. 257, 260 (D. Md. 2006) (allowing conditional class certification upon affidavits of named plaintiffs); *Lee v. Solar Energy World, LLC,* 2021 WL 915287 at *4i ("Plaintiffs may rely on affidavits or other means to make the required showing.") (internal citations and quotations omitted); *Lancaster*, 2020 WL 5500227, at *2 ("At the notice stage, courts…make a threshold

---

[11] "Concerns about the predominance of individualized nature of Plaintiffs' and the Putative Class Members' claims require merits-based analyses that courts wait to tackle during the decertification stage, after notice to potential plaintiffs is finalized and the parties have completed discovery." *Thomas v. Maximus, Inc.*, 2022 U.S. Dist. LEXIS 35126 *18 (E.D. Va. Feb. 28, 2022).

determination whether the class is similarly situated based on 'substantial allegations' in the pleadings and any submitted affidavits or declarations."); *Montoya v. S.C.C.P. Painting Contractors, Inc.*, No. CCB-07-455, 2008 WL 554114, at *3 (D. Md. Feb. 26, 2008) (granting conditional certification in part based on accusations made in sworn declarations); *Edwards*, 2021 WL 1174724 at *6 ("And though contents of Plaintiffs' declarations are very broad, the Court finds that they are sufficient to meet the lower burden at step one."); *Cerrato v. Durham Pub. Sch. Bd. of Educ.*, 1:16CV1431, 2017 WL 2983301, at *5 (M.D.N.C. Mar. 17, 2017) ("At the conditional certification stage, Plaintiffs may rely on substantial allegations made in the Complaint and supporting affidavits to show the requisite degree of similarity.") (citing *Hipp v. Liberty Nat'l Ins., Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001)); *Holmes v. Charleston Ret. Inv'rs, LLC*, 115 F. Supp. 3d 653, 657 (D.S.C. 2014) ("At this 'notice stage,' the court reviews the pleadings and affidavits to determine whether the plaintiff has carried her burden of showing that she is similarly situated to the proposed class members."); *Lancaster v. FQSR*, CV TDC-19-2632, 2020 WL 5500227 at *2 (D. Md. Sept. 11, 2020) ("At the notice stage, courts…make a threshold determination whether the class is similarly situated based on 'substantial allegations' in the pleadings and any submitted affidavits or declarations."); *Cerrato*, 2017 WL 2983301 at *5 ("At the conditional certification stage, Plaintiffs may rely on substantial allegations made in the Complaint and supporting affidavits to show the requisite degree of similarity."); *Privette*, 2020 WL 1892167 at *4 ("Courts determine whether conditional certification is warranted by examining the parties' pleadings and affidavits.") (internal citation omitted).

Thus, the Court does not determine whether a class of similarly situated plaintiffs actually exists; rather, it assesses whether the plaintiffs have made the "modest factual showing" of similarity of situation which merits the delivery of notice to potential plaintiffs of the litigation.

"Because the court only has the pleadings and affidavits before it as evidence of similarity at this stage, 'this determination is made using a fairly lenient standard, and typically results in conditional certification of a representative class.'" *Cerrato,* 2017 WL 2983301 at *5 (quoting *Mooney v. Aramco Services, Co*., 54 F.3d 1207, 1214 (5th Cir. 1995)); *see also Privette,* 2020 WL 1892167 at *4 ("plaintiffs must make a "modest showing", through their pleadings and affidavits…").  Once a plaintiff's low burden is met, the court conditionally certifies the class and authorizes notice to be sent to the putative class members regarding their opportunity to join the collective action. *See Curtis v. Time Warner Entm't-Advance/Newhouse P'ship*, No. 3:12-CV-2370-JFA, 2013 WL 1874848, at *2 (D.S.C. May 3, 2013).

### ii.  Basis For Similarly Situated Conditional Certification Finding

Named Plaintiffs and the Putative Collective have shown that (a) they were all affected by Defendants' failure to compensate for time spent in principal working activities that occurred prior to their scheduled shift start; (b) that they were required to mark on and be on duty prior to the start of their scheduled shift; (c) that this was a regular, consistent, and established practice for Sheriff's deputies; (d) they were not paid compensation when due for these subject overtime hours worked; (e) they were working within Virginia; and, (f) other current and former nonexempt deputies were treated the same way. *See generally supra* at pp. 1-6 and Exhibits 1-4. Thus, under the applicable law, Plaintiffs have met their lenient burden and conditional certification is appropriate based on the detailed pleadings and the declarations on file in support of the Motion and Memorandum.

The declarations submitted by the Plaintiff and opt-ins are sufficient evidence that the policies discussed herein were consistently applied and enforced. To be clear, Plaintiffs seek certification of a geographically confined group of individuals all performing the same kind of law enforcement work, for the same defendants, and all subject to the same relevant policies and

practices. Plaintiff has presented evidence similar to or exceeding what courts in this circuit and throughout the country have deemed sufficient for conditional certification of far more expansive FLSA collective actions. *See Hager v. Omnicare, Inc*., 5:19-CV-00484, 2020 WL 5806627, at *12 (S.D.W. Va. Sept. 29, 2020) (certifying nationwide class based on two declarations); *O'Quinn v. TransCanada USA Services, Inc*., 469 F. Supp. 3d 591, 609 (S.D.W. Va. 2020) (certifying nationwide class based on declarations of named plaintiff and five opt-in plaintiffs); *Privette*, 2020 WL 1892167, at *6 (certifying companywide class based on four declarations); *Curtis*, 2013 WL 1874848 at *4 (certifying companywide collective action based on the allegations in the complaint and one affidavit from only one location); *Brotherton v. Advanced Oilfield Services, LLC*, Case No. 2:17-CV-00825-MRH, ECF No. 64 (W.D. Penn. June 21, 2017) (granting nationwide conditional certification where motion was supported by one plaintiff and one declaration); *Barreda v. Prospect Airport Services, Inc.*, 2008 WL 7431307 (N.D. Ill. 2008) (certifying companywide collective action based on affidavits from only one location); *Crosby v. Stage Stores, Inc.*, 348 F. Supp. 3d 742, 749-50 (M.D. Tenn. 2018) (certifying a class across 800 stores based on the consistent declarations from plaintiffs who had worked at eight (8) stores); *Rivenbark v. JPMorgan Chase & Co.*, 340 F. Supp. 3d 619, 624 (S.D. Tex. 2018) (certifying a nationwide class of call-center employees based on the consistent declarations of the two named plaintiffs and ten opt-in plaintiffs from eight different stores across five states); *Aguayo v. Oldenkamp Trucking*, 2005 WL 2436477 (E.D. Cal.2005) (allegations in complaint and declaration of the plaintiff demonstrate plaintiff and other class members are similarly situated); *Long v. CPI Sec. Sys., Inc*., 292 F.R.D. 296, 301 (W.D.N.C. 2013) (certifying class based on consideration of plaintiff's and five opt-in plaintiffs' declarations).

Consequently, this Court should authorize notice to the Putative Collective Members and

allow Plaintiffs to distribute the Notice and Consent forms to the Putative Collective Members. Given the weight of evidence supporting conditional certification, and in light of Defendants' alleged violations of the FLSA, the issuance of immediate Court-approved notice to the Putative Collective Members is both appropriate and within this Court's discretion. Plaintiffs' proposed Notice is attached hereto as **Exhibit 7**.

## IV.    Conclusion

For all of the foregoing reasons, Plaintiff respectfully moves this Court to:

1.    Grant Plaintiff's Motion for Rule 23 Class Certification;

2.    Appoint Plaintiff Chris Hatcher as Rule 23 Class Representative;

3.    Appoint Butler Curwood, PLC as Rule 23 Class Counsel;

4.    Order the Defendants to provide a Rule 23 Class/FLSA Putative Collective list containing names, addresses, phone numbers, unique employee ID number, and relevant dates of employment, of the Class/Putative Collective Members;

5.    Conditionally certify the FLSA claim for purposes of notice and discovery;

6.    Order that it approves Rule 23/FLSA notice (**Exhibit 7**) be sent to all Putative Collective Members;

7.    Authorize a 60-day notice period for Putative Collective Members to join the FLSA portion of the case; and

8.    Authorize Rule 23/FLSA notice to be disseminated via First Class mail, e-mail, and text message to the Rule 23 Class/FLSA Putative Collective Members, and that such notice shall be posted conspicuously at the Sheriff's office during the notice period, and that a link to such notice and any opt-in forms may be posted on a website by Plaintiff's counsel.

Respectfully submitted,
**Christopher Hatcher, on behalf of himself and**

28

**others similarly situated**
Plaintiffs

By: */s/Samantha R. Galina*_____
       Craig Juraj Curwood (VSB No. 43975)
       Zev H. Antell (VSB No. 74634)
       Samantha R. Galina (VSB No. 96981)
       Butler Curwood, PLC
       140 Virginia Street, Suite 302
       Richmond, VA 23219
       Telephone: (804) 648-4848
       Fax: (804) 237-0413
       craig@butlercurwood.com
       zev@butlercurwood.com
       samantha@butlercurwood.com

       *Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of December 2023, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF System, which will send notification of

such filling to all counsel of record.

By:__*/s/ Samantha R. Galina*_____
       Craig Juraj Curwood (VSB No. 43975)
       Zev H. Antell (VSB No. 74634)
       Samantha R. Galina (VSB No. 96981)
       Butler Curwood, PLC
       140 Virginia Street, Suite 302
       Richmond, VA 23219
       Telephone: (804) 648-4848
       Fax: (804) 237-0413
       craig@butlercurwood.com
       zev@butlercurwood.com
       samantha@butlercurwood.com

       *Counsel for Plaintiffs*