# EXHIBIT 4

DocuSign Envelope ID: 33498DBD-B62D-4E0C-BE31-D80310E87BBE

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

CHRISTOPHER HATCHER,
individually on behalf of himself,
and on behalf of others similarly situated,

      Plaintiffs,

v.

DAVID R. HINES, SHERIFF OF THE
COUNTY OF HANOVER, VIRGINIA, *et al.*,

      Defendants.

Case No. 3:23-cv-00325-JAG

## DECLARATION OF STEVE DILORETO

I, Steve DiLoreto, declare pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge, information and belief.

1.     I was employed by the Defendants as a Hanover County Sheriff's deputy from 2003 until on or about June 30, 2022.

2.     For the duration of my tenure, I was paid on an hourly basis and classified as overtime nonexempt.

3.     I was paid by the County of Hanover and received employment benefits through the County of Hanover.

4.     In addition to any Sheriff's Office policies, I was also subject to the County's employment policies.

5.     Part of my duties as a law enforcement officer was to communicate with Hanover County's dispatch system and dispatch operators.

6.     I understand that the dispatch system was run by the County of Hanover not the Sheriff's office.

1

DocuSign Envelope ID: 33498DBD-B62D-4E0C-BE31-D80310E87BBE

7. During the time period relevant to my claim for damages, *i.e.* since May 15, 2020 until my last day worked in June 2022, I resided at 8400 Gatwick Terrace, Glen Allen VA 23060.

8. During the relevant time period that I was employed as a Sheriff's deputy, I was a supervisor (Sargeant rank) for both the patrol and the investigations units.

9. I was provided with a County of Hanover Sheriff's Office marked vehicle while I was employed as a deputy.

10. The Sheriff's Office applies uniform policies to deputies who are issued vehicles.

11. It was Defendants' policy to instruct patrol and investigations deputies with take-home vehicles to mark "on duty" (also known as "1041") on the days they are working from either: (1) the point in time that they begin driving if their vehicle is parked within Hanover County; or (2) the point in time that they enter Hanover County if they reside outside of the county limits.

12. During field training, and while at the academy, I was told of the Sheriff's requirement to "mark on."

13. I lived in Henrico County and parked my Sheriff-issued vehicle in my driveway.

14. I was instructed to mark "on duty" from the moment that I crossed the Hanover County line on each day that I worked.

15. The Hanover County Sheriff's Office required that deputies be both in an on-duty status and monitoring and/or responding to the police dispatch radio during this time prior to the start of their scheduled shift.

16. The way to accomplish being in an on-duty status from your Sheriff's vehicle was to mark "on duty" or "1041" one of two ways.

2

DocuSign Envelope ID: 33498DBD-B62D-4E0C-BE31-D80310E87BBE

17.   The two ways a deputy could mark "on duty" was (1) from a Sheriff-issued laptop computer, or (2) from a Sheriff-issued handheld or mobile radio.

18.   Marking "on duty" from our laptop or handheld was an activity that we were required to do to communicate with Hanover County's dispatch system.

19.   There are numerous communication codes besides "on duty" or "1041" which we are trained and instructed to use as deputies in the performance of our duties.

20.   Each deputy can only mark on duty for him or herself, or for a fellow deputy who was riding in the car at the same time for any reason.

21.   When I was a patrol supervisor, I would mark on duty by either calling into dispatch or logging in from my laptop in my Sheriff-issued vehicle.

22.   When I was an investigation supervisor, I would mark on duty by handheld or mobile radio on Street Crimes Unit One "SCU1" (the radio channel specific to street crimes investigators).

23.   I was not compensated for the time that I was marked "on duty" until the time that my assigned shift began.

24.   It was Defendants' policy not to pay me or other deputies for the time we were marked "on duty" prior to the start of our shift.

25.   Despite being on duty and marked on, I did not receive compensation until the commencement of my scheduled shift.

26.   The Sheriff's Office instructed deputies to listen to the police radio as soon as they turned their vehicle on.

27.   I was regularly marked "on duty" for approximately twenty-five (25) to thirty (30) minutes prior to my shift beginning.

3

DocuSign Envelope ID: 33498DBD-B62D-4E0C-BE31-D80310E87BBE

28. My understanding was that marking "on duty" was something only a Sheriff's deputy in patrol, investigations or other similar units was required to do.

29. Court services personnel, and administrative deputies with take-home vehicles were not required to mark "on duty" on days that they were working.

30. My understanding was that the act of marking "on duty" itself was a principal activity of my duties as a deputy working in patrol and in investigations.

31. My understanding was that from the moment that I marked "on duty" I was working.

32. Marking "on duty" while driving the take-home vehicle is a requirement only on days that deputies are working.

33. When deputies are off-duty (that is, on days they are not assigned to work), we were given permission to drive our Sheriff-issued vehicles under certain restrictions, but were instructed not to mark "on duty" during such off-duty driving.

34. The Sheriff gave us permission to drive our take-home vehicles while off-duty in only five limited circumstances: (1) driving to and from the gym to workout; (2) driving to and from getting a haircut; (3) driving to and from the laundromat; (4) driving to and from any Sheriff-sponsored event; and (5) driving to and from getting the take-home car serviced.

35. In all of the above circumstances, deputies were instructed not to mark on duty.

36. In my experience, and from my observations, deputies did not mark on duty when driving their take-home vehicles on their days off.

37. Deputies were not allowed to use take-home vehicles for any other off-duty purposes other than the five limited circumstances listed above.

38. Sheriff's deputies at the rank of Lieutenant and below are paid on an hourly basis.

4

DocuSign Envelope ID: 33498DBD-B62D-4E0C-BE31-D80310E87BBE

39.     My understanding is that Defendants treat Sheriff's deputies at the rank of Lieutenant and below as eligible for overtime premium (time-and-a-half pay), while deputies above the rank of Lieutenant are treated as ineligible for overtime premium compensation.

40.     Deputy pay is generally determined by the pre-loaded schedules in the Kronos system.

41.     So long as your clock-in and -out times match your pre-loaded schedule, you are paid the same amount each pay period.

42.     Sheriff's Deputies are paid on the 15th and the last day of each month.

43.     I believe, and have personal knowledge, that the Defendants' policies and practices described herein are applied on a uniform basis to all non-exempt deputies in investigations or patrol who are assigned take-home cars.

44.     I believe that the requirement to mark "on duty" each work day does not apply to deputies in court services or administrative assignments, or managerial deputies above the rank of Lieutenant.

12/18/2023
_____
Date

DocuSigned by:

Steve DiLoreto
_____
Steve DiLoreto

5