IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

CHRISTOPHER HATCHER, *on behalf*
*Of himself and all similarly situated persons*,
        Plaintiff,

v.                                       Civil Action No. 3:23cv325

DAVID R. HINES, et al.,
        Defendants.

## OPINION

For twenty years, Christopher Hatcher worked as Hanover County Sheriff's deputy. In the morning, on the way to work before their shifts, Hatcher and his fellow deputies had to call in to their superiors to indicate they were "on duty." During that pre-shift, on-duty period, the deputies had to listen for emergency calls or assignments and respond those assignments. The deputies received no compensation for that time.

Hatcher now sues Hanover County (the "County") and Hanover County Sheriff David R. Hines for compensation for the deputies' pre-shift, on-duty time.[1] He brings three claims: a collective action to recover unpaid wages and overtime pay under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) (Count One); violations of the Virginia Gap Pay Act ("VGPA"), Va. Code Ann. § 9.1-700, *et seq.* (Count Three); and violations of the Virginia Overtime Wage Act ("VOWA"), Va. Code Ann. § 40.1-29.2 (Count Four).[2] In addition to seeking conditional certification of a collective action for Count One, Hatcher seeks to certify a class action for the

---

[1] Three other named plaintiffs have joined the suit thus far: Jonathan D. McGill, Matthew Dodge, and Steve DiLoreto.

[2] The Court previously granted Hatcher's motion to voluntarily dismiss his claim under the Virginia Wage Payment Act, Va. Ann. Code § 40.1-29 (Count Two). (ECF No. 31.)

remaining counts.³ While Hatcher brings all three claims against the County, he brings only Counts One and Four against Sheriff Hines, seeking only declaratory relief.⁴

Because Eleventh Amendment immunity shields Sheriff Hines from Hatcher's claims for declaratory relief, the Court will grant Hines's Rule 12(b)(1) motion, (ECF No. 15), dismiss the claims against him, and deny as moot his Rule 12(b)(6) motion, (ECF No. 17). As for the County's Rule 12(b)(6) motion, Hatcher has pleaded sufficient facts to establish that the deputies are entitled to overtime pay under the relevant statutes, and that the County is their employer. Furthermore, the FLSA does not preempt the VOWA, and Hatcher can pursue treble damages under the VOWA. Accordingly, the Court will deny the County's motion. (ECF No. 20.)

## I. BACKGROUND

Sheriff Hines employs approximately 250 deputies and has the exclusive ability to hire and fire them. (ECF No 1, ¶¶ 9, 24.) The County, on the other hand, imposes various policies for the deputies, such as those set by the County's Human Resources Policies manual. (*Id.* ¶¶ 17–18.) Moreover, the County administers the deputies' benefits and pay, and generally provides human resources services for the Sheriff. (*Id.* ¶ 19.) The County, therefore, sets the deputies' compensation plans, including their "pay ranges, pay scales, and all pay rules affecting the [d]eputies." (*Id.* ¶ 20.) During the relevant time period, those compensation plans dictated that deputies "at the rank of Lieutenant and below" received hourly compensation. (*Id.* ¶¶ 7, 22.)

---

³ Hatcher filed his motion to certify the class and for conditional certification on December 18, 2023. (ECF No. 44.) The defendants filed their responses in opposition on January 19, 2024. (ECF Nos. 48, 49.)

⁴ The Court granted the parties' consent motion to dismiss Count Three as to Sheriff Hines. (ECF No. 36.)

2

When deputies left for work "in their Sheriff-issued patrol vehicles," the deputies had to "mark on duty" by calling in or logging in from a laptop in the car. (*Id.* ¶ 25.) By marking on duty, they indicated they were "available to respond to calls, emergencies, or any other event for which [they] may be called upon." (*Id.* ¶ 26.) Indeed, the deputies "could be, and sometimes were, called to the scene of a crime or an accident" during that period. (*Id.* ¶ 48.) The deputies had to remain available throughout their drive to their starting location. (*Id.* ¶¶ 27, 46–47.) But their hourly compensation began at the start of their scheduled shift when they reached their starting location. (*Id.* ¶¶ 46–47.) The deputies, therefore, received no compensation for this pre-shift, on-duty time. (*Id.* ¶ 54.)

Hatcher worked as a Hanover County Sheriff's Deputy from 2002 until he retired on May 21, 2022. He filed this lawsuit on May 15, 2023, against Sheriff Hines and the County. Hatcher alleges that the FLSA, the VGPA, and the VOWA require the defendants to compensate the deputies for the time between when a deputy marks "on duty" and the beginning of the scheduled shift at the deputies' starting locations.

## II. DISCUSSION

Sheriff Hines moves to dismiss Hatcher's claims on sovereign-immunity grounds under Rule 12(b)(1). The County has moved to dismiss Hatcher's claims under Rule 12(b)(6), arguing that (1) it does not employ the deputies and (2) the FLSA does not require compensation for the deputies' pre-shift, on-duty time. For those same reasons, it says the VGPA claim should fail. As

3

for Hatcher's VOWA claim, the County argues that the FLSA preempts the VOWA, and that Hatcher cannot pursue treble damages under the applicable version of the VOWA.

### A. Sheriff Hines's Rule 12(b)(1) Motion[5]

#### 1. *Declaratory Relief on Behalf of Current Employees*

Sheriff Hines argues that Eleventh Amendment immunity shields him from any claim for retrospective relief, including Hatcher's request for declaratory relief under the FLSA. Sovereign immunity under the Eleventh Amendment protects the state—including "State officials" and "arms of the State"—from suits for money damages. *Hutto v. S.C. Retirement Sys.*, 773 F.3d 536, 549 (4th Cir. 2014); *Bland v. Roberts*, 730 F.3d 368, 389–90 (4th Cir. 2013). That immunity extends to Virginia's sheriffs, who are state constitutional officers and "arm[s] of the State." *Bland*, 730 F.3d 368, 390–91. *Ex parte Young*, 209 U.S. 123 (1908), provides a narrow exception to Eleventh Amendment immunity, allowing a plaintiff to sue a state or state official for injunctive or declaratory relief from violations of federal law—but only prospectively. *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 646 (2002).

Hatcher no longer works as a deputy, so declaratory judgment would provide him no relief. And a FLSA collective action, conditionally certified or not, "does not produce a class with an independent legal status[] or join additional parties to the action" so that a former employee can seek relief for current employees. *See Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013). Simply put, "former employees . . . cannot step into the shoes of current employees who are putative plaintiffs." *Conners v. Gusano's Chi. Style Pizzeria*, 779 F.3d 835, 841 (8th Cir. 2015) (citing *Genesis*, 569 U.S. at 78). Hatcher, therefore, cannot obtain prospective declaratory relief

---

[5] A motion under Rule 12(b)(1) tests the court's subject matter jurisdiction. The plaintiff bears the burden of proving proper subject matter jurisdiction as the party asserting jurisdiction. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

4

on his FLSA claim. Accordingly, the Court will dismiss Count One, the FLSA claim, as to Sheriff Hines.

### 2. *Virginia's Eleventh Amendment Immunity*

Sheriff Hines next contends the VOWA's waiver of sovereign immunity does not explicitly waive Virginia's Eleventh Amendment immunity from suit in federal court. Accordingly, Hatcher cannot sue him under the VOWA. To waive its immunity from suit in federal court, Virginia must include in a state statute "a clear declaration that [it] intends to submit itself to [federal court] jurisdiction." *Pense v. Md. Dep't of Pub. Safety and Corr. Servs.*, 926 F.3d 97, 101 (4th Cir. 2019). Rather than a general waiver of sovereign immunity, the state statute must expressly waive the Virginia's immunity against suits in federal court. *Id.* ("Consequently, '[a]lthough a State's general waiver of sovereign immunity may subject it to suit in state court, it is not enough to waive the immunity guaranteed by the Eleventh Amendment.'" (quoting *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985))).

The VOWA's sovereign-immunity waiver does not specify whether Virginia had waived its sovereign immunity in federal court as well as state court. It simply states the provision "constitutes a waiver of sovereign immunity by the Commonwealth." Va. Code Ann. § 40.1-29.2(A). Nor does any other provision express clear consent to suit in federal court. *See Pense*, 926 F.3d at 101. Given the lack of an express waiver of sovereign immunity in federal court, the Court will also dismiss Count Four, the VOWA claim, as to Sheriff Hines.

### *B. The County's Rule 12(b)(6) Motion*[6]

#### *1. The FLSA and VGPA Claims (Counts One and Three)*[7]

##### *a. Compensable Time*

In its motion to dismiss, the County first argues that the deputies' pre-shift, on-duty time is not compensable under the FLSA pursuant to the Portal-to-Portal Act. The FLSA "requires employers to compensate employees for all hours worked." *Truslow v. Spotsylvania Cnty. Sheriff*, 783 F. Supp. 274, 277 (E.D. Va. 1994). Specifically, 29 U.S.C. § 207(k) sets a scheme requiring time-and-a-half pay for police officers who work more than a certain number of hours depending on the length of their work period.[8]

The Portal-to-Portal Act, however, amended the FLSA to exclude certain activities as non-compensable. Among those activities, the statute lists "walking, riding, or traveling to and from

---

[6] A Rule 12(b)(6) motion tests the sufficiency of a complaint. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). To do so, a court accepts as true the facts as pled by the plaintiff and draws all reasonable inferences in favor of the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must state facts that, when accepted as true, state a claim to relief that is plausible on its face. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

[7] The VGPA ensures that a police officer who "works more than his normal hours, but less than the FLSA maximum" will receive overtime wages for those "gap" hours, calculated based on the FLSA. *Rogers v. City of Richmond*, 851 F. Supp. 2d 983, 986–87 (E.D. Va. 2012); *see also* Va. Code Ann. § 9.1–702. The County says the VGPA claim should fail for the same reasons the FLSA claim should fail. The Court, therefore, analyzes those claims together.

[8] For example, police officers who work for a 14-day period should receive overtime pay after working 86 hours. *See Fact Sheet #8: Law Enforcement and Fire Protection Employees Under the Fair Labor Standards Act (FLSA)*, Wage and Hour Div., U.S. Dep't of Lab. (last revised Mar. 2011), https://www.dol.gov/agencies/whd/fact-sheets/8-flsa-police-firefighters.

6

the place of performance of the principal activity or activities which such employee is employed to perform." *Id.* § 254(a)(1). The statute also excludes "preliminary and postliminary" activities as not compensable, including "the use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting." *Id.* §§ 254(a), (a)(2).

As amended, the FLSA thus requires compensation for both "principal . . . activities" and those activities that are "integral and indispensable part[s] of the principal activities." *Steinger v. Mitchell*, 350 U.S. 247, 256 (1956). In short, an employee must receive compensation for any activity that "is an intrinsic element of those activities [that an employee is employed to perform] and one with which the employee cannot dispense if he is to perform his principal activities." *Integrity Staffing Sols., Inc. v. Busk*, 547 U.S. 27, 33 (2014).

Consistent with § 254(a) of the FLSA, Federal Department of Labor regulations state:

> A police officer, who has completed his or her tour of duty and who is given a patrol car to drive home and use on personal business, is not working during the travel time even where the radio must be left on so that the officer can respond to emergency calls.

29 C.F.R. § 553.221(f). But the regulation notes that, "[o]f course, the time spent in responding to such calls is compensable." *Id.*[9]

---

[9] Although the Fourth Circuit has not addressed police commutes under the FLSA, other circuits have. For instance, in *Llorca v. Sheriff*, the Eleventh Circuit held the FLSA did not require compensation for the time deputies spent monitoring their radios for emergency calls and the roads for traffic violations. 893 F.3d 1327–28, 1322 (11th Cir. 2018). The sheriff, however, did "compensate[] the deputies for any time that the deputies spent responding to calls or emergencies or actually enforcing traffic laws during their commutes." *Id.* at 1322.

In *Chagoya v. City of Chicago*, the Seventh Circuit determined that the Portal-to-Portal Act's commuting exclusion meant that SWAT officers could not receive pay for the time they spent transporting SWAT gear to and from their homes. 992 F.3d 607, 622 (7th Cir. 2021). In coming to that conclusion, the Seventh Circuit explained that the officers' time spent "respond[ing]

7

Unlike the regulation, which addresses a police officer's post-shift, off-duty commute, Hatcher alleges his pre-shift, on-duty time required compensation. Moreover, Hatcher alleges that deputies not only monitored their radios during that period, but also responded to calls and assignments. (ECF No. 1 ¶ 48.) Deputies primarily respond to calls, emergencies, and assignments, and they cannot "dispense" with that duty, regardless of whether their shifts have begun. *See Integrity Staffing*, 547 U.S. at 33. Additional factual development may reveal the extent to which the deputies' pre-shift, on-duty time is compensable. But at this stage, Hatcher has alleged sufficient facts for this claim to proceed.

### *b. The County's Joint Employer Status*

The County next asserts that, under the FLSA, it is not the deputies' employer. The FLSA defines "employee" as "any individual employed by an employer" and, as relevant here, "any individual employed by a State" or "political subdivision of a State." 29 U.S.C. §§ 203(e)(1), (e)(2)(C). It further defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee," including a "public agency." *Id.* § 203(e)(1). Courts have interpreted these definitions to "encompass a broader swath of workers than would constitute employees at common law." *Salinas v. Com. Interiors, Inc.*, 848 F.3d 125, 137 (4th Cir. 2017) (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992)). For example, under the joint-employment doctrine, multiple entities may qualify as employers of a single employee for FLSA purposes. *Id.* at 133.

---

to emergency situations that occur while in transit" is not compensable under the Portal-to-Portal Act." *Id.*

Those cases, however, provide little guidance here. *Llorca* did not address situations where officers received calls and assignments during their commutes and then responded to those calls. And *Chagoya* only indirectly addressed the compensability of time spent responding to emergency situations.

8

The Fourth Circuit has imposed a two-part test to analyze whether an entity qualifies as a joint employer under the FLSA. *Id.* at 139–40. The Court must (1) "determine whether [the] two entities should be treated as joint employers" and (2) "analyze whether the worker constitutes an employee or independent contractor of the combined entity, if they are joint employers, or each entity, if they are separate employers." *Id.* at 140.

The first part of the test assesses whether a joint-employer relationship exists. It looks to "whether two or more . . . entities are not completely disassociated with respect to a worker such that the persons or entities share, agree to allocate responsibility for, or otherwise codetermine—formally or informally, directly or indirectly—the essential terms and conditions of the worker's employment." *Id.* at 141 (internal quotation marks omitted). The Court should consider several factors in reviewing that relationship, including:

> (1) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the power to direct, control, or supervise the worker, whether by direct or indirect means;
> (2) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the power to—directly or indirectly—hire or fire the worker or modify the terms or conditions of the worker's employment;
> (3) The degree of permanency and duration of the relationship between the putative joint employers;
> (4) Whether, through shared management or a direct or indirect ownership interest, one putative joint employer controls, is controlled by, or is under common control with the other putative joint employer;
> (5) Whether the work is performed on a premises owned or controlled by one or more of the putative joint employers, independently or in connection with one another; and
> (6) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate responsibility over functions ordinarily carried out by an employer, such as handling payroll; providing workers' compensation insurance; paying payroll taxes; or providing the facilities, equipment, tools, or materials necessary to complete the work.

*Id.* at 141–42. The "six factors do not constitute an exhaustive list," and quality, not quantity, matters most in weighing them. *Id.* at 142. "[O]ne factor alone" can establish a joint-employment relationship. *Id.*

The County emphasizes that, as a state constitutional officer, Sheriff Hines acts independently and is "neither [an] agent[] of nor subordinate to" the County. *See Roop v. Whitt*, 289 Va. 274, 279–80, 768 S.E.2d 692, 696 (2015). And by statute, the County says, the deputies are employees of Sheriff Hines rather than the County because only he can hire or fire deputies. *See* Va. Code Ann. §§ 15.2-1603, -1604.

But the facts as pled by Hatcher demonstrate a joint-employer relationship between Sheriff Hines and the County. Although Sheriff Hines, rather than the County, directly supervises the deputies, the County imposes human-resources polices it requires the deputies to follow. Indeed, the County essentially provides all human resources services for Sheriff Hines. The deputies must tell the County what shifts they work, what benefits they wish to receive, and what sick leave or vacation time they take. And all compensation plans run through the County. The County determines which deputies will receive salaried pay or hourly pay, and it further administers payroll and benefits by setting the deputies' "pay ranges, pay scales, and all pay rules." (ECF No 1. ¶ 20.) While Sheriff Hines directly supervises the deputies' day-to-day activities, the County sets a significant number of the deputies' terms and conditions of work through human-resources policies and pay rules. Because Sheriff Hines and County codetermine the terms and conditions of the deputies' work, they are "not completely disassociated." *See Salinas*, 848 F.3d at 141–42 (factors (1) and (2)).

If the entities are "not completely disassociated," the Court proceeds to step two to assess whether the worker is an employee. *Id.* at 140. To do so, the Court reviews whether the "worker

10

is economically dependent on . . . his putative joint employers." *Id.* at 150. Six factors guide that analysis:

> (1) the degree of control that the putative employer has over the manner in which the work is performed; (2) the worker's opportunities for profit or loss dependent on his managerial skill; (3) the worker's investment in equipment or material, or his employment of other workers; (4) the degree of skill required for the work; (5) the permanence of the working relationship; and (6) the degree to which the services rendered are an integral part of the putative employer's business.

*Id.* at 160 (quoting *Schultz*, 466 F.3d at 304–05).

Here, Hatcher has also alleged sufficient facts to conclude the deputies qualify as employees—not independent contractors—of the joint employers. Together, the County and Sheriff Hines govern how and when the deputies conduct their work. *See id.* (factor (1)). The deputies' work of responding to incidents and helping the public is "an integral part of" the services Sheriff Hines, together with the County, provides to the public. *See id.* (factor (6)). The deputies "economically depend[]" on the Sheriff and County together as the two entities that set their terms and conditions for work, demonstrating they are employees rather than independent contractors. *See id.* Because Hatcher has pleaded sufficient facts to establish the County as the deputies' joint employer, the Court will deny the County's motion to dismiss Count One, the FLSA claim. And because the FLSA claim against the County can proceed, the VGPA claim may also proceed.

### 2. *The VOWA Claim (Count Four)*

The County next moves to dismiss Hatcher's VOWA claim. Although the General Assembly amended the VOWA in 2022, Hatcher brings his VOWA claim under the 2021 version of the VOWA (the "2021 VOWA") and thus limits his claim to "the time period between July 1, 2021[,] and June 30, 2022." (ECF No. 1, ¶ 32; *see* Va. Code Ann. § 40.1–29.2 (2021).) The 2021 VOWA mandates that for

11

> law-enforcement employees of any public sector employer for whom 29 U.S.C. § 207(k) applies, such employer shall pay [a time-and-a-half] overtime premium for (i) all hours worked in excess of the threshold set forth in 20 U.S.C. § 207(k) and (ii) any additional hours such employee worked or received as paid leave as set forth in subsection A of [the VGPA].

Va. Code Ann. § 40.1–29.2(C) (2021).

The County raises two arguments—first, that the FLSA preempts the VOWA, and second, that Hatcher cannot recover treble damages under the 2021 VOWA.

### *a. Preemption*

A preemption analysis begins "with the basic assumption that Congress did not intend to displace state law." *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 192 (4th Cir. 2007) (quoting *S. Blasting Servs., Inc. v. Wilkes County*, 288 F.3d 584, 589 (4th Cir. 2002)). But "[f]ederal law may preempt state law under the Supremacy Clause in three ways—by express preemption, by field preemption, or by conflict preemption." *In re Lowe's Cos.*, 517 F. Supp. 3d 484, 496 (W.D.N.C. 2021) (cleaned up). The first and second categories of preemption do not apply here because Congress has not "expressly preempted state wage laws[,] nor [does] the FLSA reflect[] a statutory intent to preempt the entire field of wage regulations." *Id.*

The third category, conflict preemption, applies when a state law "actually conflicts with federal law." *Anderson*, 508, F. 3d at 191. That includes situations where "'the state law stands as an obstacle to the accomplishment of the full purposes and objectives' of federal law"—also known as "obstacle preemption." *Id.* at 191–92 (quoting *Worm v. Am. Cyanamid Co.*, 970 F.2d 1301, 1305 (4th Cir. 1992)).

The County, relying on the Fourth Circuit's decision in *Anderson v. Sara Lee Corp.*, asserts that the FLSA preempts the VOWA. *See id.* at 191. The plaintiffs in *Anderson* brought state breach-of-contract, negligence, and fraud claims as "FLSA-based claims" to recover compensation

12

for their overtime work. *Id.* at 192–93. The Fourth Circuit determined that bringing state tort claims to recover overtime compensation implicated obstacle preemption because tort claims would displace the "exclusive remedies" under the FLSA and would "stand[] as an obstacle to the accomplishment of the full purposes and objectives of the FLSA." *Id.* at 193 (quoting *Worm*, 970 F.2d at 1305). After *Anderson*, some courts have held "claims that 'merely duplicate' FLSA claims are preempted," while others have held a plaintiff can bring a parallel state law claim with a FLSA claim "so long as there is no duplicate recovery." *See Roldan v. Bland Landscaping Co.*, 2021 WL 7185223, at *5 (W.D.N.C. Mar. 15, 2021) (collecting cases).

*Anderson* "held that the [FLSA] preempted state contract and tort claims for FLSA violations." *Guthrie v. PHH Mort. Corp.*, 79 F.4th 328, 340 n.11 (4th Cir. 2023). In other words, a plaintiff cannot use a state common law claim as a vehicle to vindicate FLSA rights or remedies. *Anderson*, however, did "not decide whether the FLSA preempts more favorable state wage and hour laws asserted in addition to FLSA overtime claims, where the state claims seek recovery based on the same hours worked." *In re Lowe's*, 517 F. Supp. 3d at 498.

Unlike *Anderson*, in which the plaintiffs tried to use state common law as a vehicle to vindicate their FLSA rights, Hatcher brings his claim under a state wage-and-hour law, while also asserting his state and federal overtime claims side-by-side. And because "*Anderson* does not decide whether the FLSA preempts more favorable state wage and hour laws asserted in addition to FLSA overtime claims," *Anderson* does not apply here. *See id.* at 498.

The Court must assume "that Congress did not intend to displace state law." *S. Blasting Servs., Inc.*, 288 F.3d at 589. Indeed, the FLSA "expressly contemplates that states may enact stricter minimum wage and overtime requirements that an employer must follow notwithstanding the FLSA." *In re Lowe's*, 517 F. Supp. 3d at 499. The FLSA's savings clause ensures that "[n]o

13

provision [of the FLSA] shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than" the FLSA's "or a maximum work week lower than" the FLSA's. *See* 29 U.S.C. § 218(a).

A finding of preemption would also contradict federalism principles by "bar[ring] enforcement of all state wage and hour laws that did not exceed the standards of the FLSA." *Id.* at 499. That would result in "a significant intrusion on state authority and a reversal of the traditional presumption against preemption, which is particularly strong given states' lengthy history of regulating employees' wages and hours." *Id.* (citing *Cal. Div. of Lab. Standards Enf't v. Dillingham Constr.*, 519 U.S. 316, 330 (1997)). The Court, therefore, concludes the FLSA does not preempt Hatcher's VOWA claim. *See Knepper v. Rite Aid Corp.*, 675 F.3d 249, 264 (3d Cir. 2012) (distinguishing *Anderson* and finding the FLSA does not preempt comparable state wage-and-hour claims).

### *b. Treble Damages*

Hatcher seeks treble damages under the 2021 VOWA. When it enacted the 2021 VOWA, the Virginia General Assembly authorized treble damages for VOWA claims by amending Virginia Code § 40.1-29, the Virginia Wage Payment Act (the "VWPA"). 2021 Va. Acts, Spec. Sess. I, chs. 445, 513. Section 40.1-29(J) stated that a plaintiff could recover treble damages for knowing violations of "this section or § 40.1-29.2" (the VOWA). Va. Code Ann. § 40.1-29(J). But the General Assembly in 2022 amended both the VWPA and the VOWA. 2022 Va. Acts chs. 461, 462. One of those changes edited Subsection J to eliminate the reference to the VOWA, thus limiting treble damages only to violations of "this section," the VWPA. *Id.*

The Virginia Supreme Court has held "that retroactive application of statutes is disfavored and that 'statutes are to be construed to operate prospectively only unless a contrary intention is

14

manifest and plain.'" *City of Charlottesville v. Payne*, 299 Va. 515, 528, 956 S.E. 2d 203, 209 (2021) (citing *Town of Culpeper v. Va. Elec. & Power Co.*, 215 Va. 189, 194, 207 S.E. 2d 864 (1974)). And Virginia Code § 1-238 explains that when the General Assembly has "[r]eenacted" an act, "the changes enacted to a section of the Code . . . are in addition to the existing substantive provisions in that section or act, and are effective prospectively unless the bill expressly provides that such changes are effective retroactively on a specified date."

Even if it lacks explicit retroactivity language, an amended statute may still apply retroactively if it "affect[s] 'remedial' or 'procedural' rights rather than 'substantive' or 'vested' rights"—but not if it does both. *McCarthy v. Commonwealth*, 73 Va. App. 630, 647, 864 S.E.2d 577, 585 (2021). "A law affects substantive rights if it deals with the creation of duties, rights, and obligations. . . . [or] if it alters the range of conduct or the class of persons that is punishable under law." *Id.* at 650, 864 S.E.2d at 587 (cleaned up).

The 2022 amendments "amended and reenacted" §§ 40.1-29, -29.1, and -29.2, and added § 40.1-29.3. *See* 2022 Va. Acts chs. 461, 462. The General Assembly repealed much of Section 40.1-29.2 and amended it by explicitly adding more aspects of the FLSA, including "all applicable exemptions" from the FLSA. *See id.* The amendments also added § 40.1-29.3, which establishes a state private right of action to employees of railway carriers under the federal Railway Labor Act. *Id.* Most of the changes to § 40.1-29, including those to Subsection J, simply deleted mentions of § 40.1-29.2 (the VOWA), sometimes inserting "Section 40.1-29.3" in its place. The revision to Subsection J limited the availability of treble damages and, therefore, qualifies as a remedial change to the statute.

But other revisions to § 40.1-29 effected substantive changes to the law. For example, Subsection E previously imposed criminal liability on§ employers in certain circumstances for the

15

nonpayment of wages. But by swapping out code section numbers in Subsection E, the subsection now applies only to railway carriers, thus altering "the class of persons that is punishable under law." *McCarthy*, 73 Va. App. at 650, 864 S.E.2d at 587. Likewise, Subsection H, which previously imposed a civil penalty for violations of the VOWA, now applies only to violations of § 40.1-29.3. Because the 2022 amendments contain no express retroactive language, and because they effected both procedural and substantive changes to § 40.1-29, the amended version of Subsection J cannot apply retroactively. *See id.* at 647, 864 S.E.2d at 585. Hatcher may, therefore, pursue treble damages for his VOWA claim.

### III. CONCLUSION

Because Eleventh Amendment immunity shields Sheriff Hines from suit and Hatcher has no personal interest in prospective declaratory relief, the Court will grant Sheriff Hines's Rule 12(b)(1) motion, (ECF No. 15), and deny as moot his 12(b)(6) motion, (ECF No. 17). In addition, for the foregoing reasons, the Court will deny the County's motion to dismiss. (ECF No. 20.)

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 18 March 2024
Richmond, VA

/s/ 
John A. Gibney, Jr.
Senior United States District Judge