IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

CHRISTOPHER HATCHER, *on behalf of himself and all similarly situated persons*, et al.,
        Plaintiffs,

v.                                    Civil Action No. 3:23cv325

COUNTY OF HANOVER,
        Defendant.

## OPINION

The plaintiffs, a group of former Hanover County Sheriff's deputies, have sued Hanover County because they did not receive pay for their pre-shift, on-duty time spent in their patrol cars. The plaintiffs have moved for conditional certification under the Fair Labor Standards Act ("FLSA") for their FLSA claim (Count One), and for class certification under Federal Rule of Civil Procedure 23 for their two other claims: (1) a claim for violations of the Virginia Gap Pay Act ("VGPA"), Va. Code § 9.1-700, *et seq.* (Count Three), and (2) a claim for violations of the Virginia Overtime Wage Act ("VOWA"), Va. Code § 40.1-29.2 (Count Four).[1] As explained below, the plaintiffs have met their burden under Rule 23 for class certification and have similarly established that the Court should conditionally certify the FLSA collective action. Accordingly, the Court will grant the plaintiffs' motion.[2]

---

[1] On August 21, 2023, the Court granted Hatcher's motion to voluntarily dismiss a fourth claim, Count Two of his complaint, which he had brought under the Virginia Wage Payment Act, Va. Code § 40.1-29. (ECF No. 31.)

[2] Five days before the date of the scheduled hearing on the certification motion, the County filed a notice of additional evidence, seeking to supplement the record for the motion for class certification. (ECF No. 58.) In response, the plaintiffs filed a motion to strike the notice, calling it untimely and unfair. (ECF Nos. 59, 60.) As stated at the hearing on the certification motions, the Court will grant the motion to strike. (ECF No. 59.)

## I. <u>BACKGROUND</u>

The Hanover County Sheriff employs approximately 250 deputies. (ECF No 1. ¶¶ 9, 24.) The plaintiffs have alleged that Hanover County acts as the deputies' joint employer with the Sheriff. All deputies at the rank of lieutenant and lower receive hourly, rather than salaried, pay. (ECF No. 1 ¶ 22.)

To support their certification motion, the four named plaintiffs each submitted sworn declarations describing their work and the time for which they and other deputies were paid. (*See* ECF Nos. 45-1, 45-2, 45-3, 45-4.) The plaintiffs allege that Hanover County improperly failed to pay them and other deputies for time spent "on duty" while they drove to work. When deputies drove to work "in their Sheriff-issued take-home vehicles," the deputies' supervisors in the Sheriff's Office required that they "mark 'on duty.'" (ECF No. 45-1 ¶¶ 13–14.)

Deputies marked on duty by either calling in on their radio or "through their mobile data terminal in their vehicles." (ECF No. 48-3 ¶ 5.) Following the direction of their supervisors, those deputies who lived within Hanover County marked on duty "when they left their homes." (ECF No. 45-1 ¶¶13–14; ECF No. 45-2 ¶¶ 13–14.) Deputies who lived outside of Hanover County received inconsistent instructions from their supervisors. Some supervisors told deputies to mark on duty "when they left their homes," while others told them to mark on duty "when they crossed over the Hanover County line." (ECF No. 45, at 2; *see, e.g.,* ECF No. 45-3 ¶ 14.) Deputies typically received these instructions during field training. (ECF No. 48-2, at 9.)

Once deputies marked on duty, they became available to respond to calls from dispatch or other incidents they happened upon, and the deputies sometimes responded to such calls and incidents. (ECF No. 45-5, at 31; ECF No. 48-2, at 4–5.) After marking on duty, the deputies

2

would then finish driving to work and begin their scheduled shifts. But the deputies received no pay for this pre-shift, on-duty time.

## II. DISCUSSION

Hanover County first argues that the plaintiffs cannot pursue a Rule 23 class action on their VOWA claim and must instead bring their VOWA claim as a collective action. The Court first addresses, and rejects, that argument before addressing class certification for the state-law claims and conditional certification of the FLSA collective action.

### A. Class Certification for Counts Three and Four

#### 1. Class Certification for VOWA Claim (Count Four)

The plaintiffs bring their VOWA claim under the 2021 version of the VOWA (the "2021 VOWA"). The 2021 VOWA ensured that "fire protection or law-enforcement employees" would receive overtime pay for working time over certain thresholds. *See* Va. Code § 40.1-29.2 (2021). While the law was in effect, the 2021 version of the Virginia Wage Payment Act (the "2021 VWPA") provided a cause of action for violations of the 2021 VOWA. Va. Code § 40.1-29(J) (2021); *see also* Va. Code § 40.1-29(J). In relevant part, the 2021 VWPA says that an "employee may bring an action, individually, jointly, with other aggrieved employees, or on behalf of similarly situated employees as a collective action consistent with the collective action procedures of the Fair Labor Standards Act, 29 U.S.C. § 216(b)." *Id.* While a collective action allows class members to opt into litigation as plaintiffs, a class action allows class members to opt out. *Glennon v. Anheuser-Busch, Inc.*, No. 4:21cv141, 2022 WL 18937383, at *1 (E.D. Va. Sept. 22, 2022).

The County asserts that, under that language, the plaintiffs can pursue their VOWA claim as only a FLSA collective action, not as a class action under Federal Rule of Civil Procedure 23. "[T]he Federal Rules of Civil Procedure generally govern all civil actions in federal court."

3

*Pledger v. Lynch*, 5 F.4th 511, 518 (4th Cir. 2021). And Federal Rule of Civil Procedure 23 governs class actions. But when a state rule conflicts with those federal rules, a court must walk through two steps to determine which rule applies. *Id.* First, if "the Federal Rules 'answer[] the question in dispute,'" then the federal rule governs "unless, at step two of the analysis, [the court] find[s] the relevant Federal Rules invalid under the Constitution or the Rules Enabling Act." *Id.* (citing *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010)). If the federal rule "answers the 'same question'" as the state rule, that ends the step one analysis. *Id.* (quoting *Shady Grove*, 599 U.S. at 398–99).

Step two looks to "whether the conflicting state law is substantive or procedural in nature," because the federal rules cannot "'abridge, enlarge, or modify any *substantive* right' under state law." *Glennon*, 2022 WL 18937383, at *3 (quoting 28 U.S.C. § 2072(b)). "This central question 'turns on whether the state law actually is part of a State's framework of substantive rights or remedies." *Id.* (quoting *Shady Grove*, 559 U.S. at 419 (Stevens, J., concurring)).

But at step two, "the bar for finding an Enabling Act problem is a high one." *Shady Grove*, 559 U.S. at 432 (Stevens, J., concurring). "The Federal Rules of Civil Procedure enjoy presumptive validity under both the constitutional and statutory constraints, and the Supreme Court has so far rejected every challenge to the Federal Rules that it has considered under the Rules Enabling Act." *Pledger*, 5 F.4th at 521 (cleaned up) (first quoting *Burlington N. R.R. Co. v. Woods*, 480 U.S. 1, 6 (1978); and then quoting *Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328, 1336 (D.C. Cir. 2015)).

The plaintiffs can proceed with a Rule 23 class action on their VOWA claim. Even assuming the VWPA's language answers the same question as Rule 23 and creates a conflict, Rule 23 does not pose a Rules Enabling Act problem here because the FLSA-procedure language in the

4

VWPA is procedural rather than substantive. "A requirement that individuals must opt-in or opt-out of the suit does not affect any individual's right to litigate the case on their own nor alter any of the elements" of a VOWA claim. *See Heppard v. Dunham's Athleisure Corp.*, --- F. Supp. 3d ----, No. 23cv10834, 2023 WL 8521392, *3 (E.D. Mich. Dec. 8, 2023) (holding the same with respect to the Ohio Minimum Fair Wages Standards Act); *see, e.g., Knepper v. Rite Aid Corp.*, 675 F.3d 249, 264–65 (3d Cir. 2012) (suggesting that the "the Rules Enabling Act does not bar certification of an opt-out class action based on state employment-law claims paralleling the FLSA" and collecting cases). Because the "opt-in/opt-out distinction is one of procedure," Rule 23 governs. *See Glennon*, 2022 WL 18937383, at *3 (construing the VWPA's opt-out language as procedural and allowing the VWPA claim to proceed as a Rule 23 class action).

### 2. *Class Certification Analysis*

The plaintiffs here seek class certification for their state claims under Rule 23(b)(3). To do so, the plaintiffs much satisfy seven requirements. First and foremost, Rule 23(c) requires (1) ascertainability, meaning that "the members of a proposed class be 'readily identifiable.'" *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014) (quoting *Hammond v. Powell*, 462 F.2d 1053, 1055 (4th Cir. 1972)); *see* Fed. R. Civ. P. 23(c)(1)(B). Moreover, under Rule 23(a), the plaintiffs must show (2) numerosity, (3) commonality, (4) typicality, and (5) adequacy. Fed. R. Civ. P. 23(a). Rule 23(b)(3) further requires plaintiffs to demonstrate (6) predominance and (7) superiority. Fed. R. Civ. P. 23(b)(3). The Court will address each element.

#### a. *Ascertainability*

"A class cannot be certified unless a court can readily identify the class members in reference to objective criteria." *EQT Prod. Co.*, 764 F.3d at 358. The plaintiffs seek to certify the following class:

> All current and former Hanover County Sheriff's Deputies employed by Defendants at the rank of Lieutenant or below in patrol, investigations, or similar unit, who were issued take-home patrol cars and were required to "mark-on duty" prior to the start of their scheduled shift(s), during any time within the liability period since May 15, 2020.

(ECF No. 45, at 9 (strikethrough and underlining omitted).) Those objective criteria provide sufficient metrics to identify potential class members.

The County disputes the existence of any uniform policy requiring deputies to mark on duty, so determining which deputies were affected by marking on-duty would require case-by-case determinations of which deputies fall within the class. But at this stage the plaintiffs need not "identify every class member." *EQT Prod. Co.*, 764 F.3d at 358. Instead, they need only "ensure that there will be some 'administratively feasible [way] for the court to determine whether a particular individual is a member' at some point." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 658 (4th Cir. 2019) (quoting *EQT Prod. Co.*, 764 F.3d at 358). The plaintiffs' description of the class and its objective criteria will facilitate identification of class members "on a large-scale basis." *Id.* Accordingly, the plaintiffs have met their burden of establishing ascertainability of the class.

### b. Numerosity

The proposed class must demonstrate that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Rule 23 imposes no magic number for numerosity; instead, numerosity depends on the "particular circumstances of the case and generally, unless abuse is shown, the trial court's decision on this issue is final." *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967). In this case, the mark-on policy or practice described in the plaintiffs' declarations applied broadly, affecting

"approximately 251 identically situated deputies." (ECF No. 45, at 11.) Given the large number of deputies affected, the plaintiffs have met the numerosity requirement.

### c. Commonality and Predominance

The commonality requirement considers whether there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a). The "far more demanding" predominance requirement "tests whether proposed classes are sufficiently cohesive" by looking at "the legal or factual questions that qualify each class member's case as a genuine controversy." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997). For that reason, "the 'commonality' requirement of Rule 23(a)(2) is 'subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class predominate over' other questions." *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 n.4 (4th Cir. 2001) (quoting *Amchem Prods.*, 521 U.S. at 609).

The named plaintiffs submitted declarations asserting that their supervisors instructed deputies to mark "on duty" whenever they drove their take-home police cars from their homes to the beginning of their shift and that they did not receive pay for that period. (*See, e.g.*, ECF No. 45-1 ¶ 10; ECF No. 45-2 ¶¶ 11–12; ECF No. 45-3 ¶ 11; ECF No. 45-4 ¶ 11.) Multiple plaintiffs describe this practice as a "policy" that they learned about "[d]uring field training." (ECF No. 48-2, at 9; *see also* ECF No. 45-3 ¶ 12.)

The County disputes the existence of any such uniform policy for marking on duty, further arguing that "the record evidence demonstrates that deputies were paid for the time they engaged in law enforcement action, regardless of when or where they marked 'on.'" (ECF No. 48, at 21.)

Notwithstanding the County's contrary claims, the plaintiffs' declarations describe a consistent policy—or at least a practice—of requiring deputies that drive to work in police cars to

7

mark on duty before they arrived for their scheduled shift, and not compensating them for that time. That "common conduct" by the sheriff and County toward the deputies "bear[s] on the central issue in the litigation"—whether the deputies must receive compensation for the pre-shift, on-duty period. *See EQT Prod. Co.*, 764 F.3d at 366. The County notes that deputies in different units marked on duty in different ways, and individual deputies marked on duty at different times. But this lack of consistency does not undermine the cohesiveness of the proposed class, which the plaintiffs have appropriately narrowed to only those deputies who drove to work in assigned police cars and marked on duty pre-shift while driving to work. *Cf. Amchem Prods.*, 521 U.S. at 624 (finding predominance factor unmet considering the "greater number of questions peculiar to the several categories of class members, and to individuals within each category, and the significance of those uncommon questions"). For those reasons, the proposed class satisfies the predominance and commonality factors.

### d. Typicality

Rule 23 also requires typicality. To satisfy this requirement, the "plaintiff's claim cannot be so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of his own individual claim." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466–67 (4th Cir. 2006). To analyze typicality, courts should "begin with a review of the elements of plaintiffs' *prima facie* case and the facts on which the plaintiff would necessarily rely to prove it[,] then determine the extent to which those facts would also prove the claims of the absent class members." *Id.* at 467. "[M]any courts have found typicality if the claims or defenses of the representatives and the members of the class stem from a single event or a unitary course of conduct." *Branch v. Gov't Emps. Ins. Co.*, 323 F.R.D. 539, 547 (E.D. Va. 2018).

For their VOWA claim, the plaintiffs' must show that the deputies worked hours "in excess of the threshold set forth in 20 U.S.C. § 207(k),"—*i.e.*, part of the FLSA—along with "any additional hours [they] worked or received as paid leave as set forth in subsection A of the" VGPA. Va. Code § 40.1-29.2(C) (2021). By incorporating by reference the FLSA, the VOWA and VGPA rely on the FLSA's definitions of compensable time. Thus, like the FLSA claim, the plaintiffs' state-law claims rise and fall on the same factual and legal questions: the sheriff's policy or practice requiring deputies to mark on, the circumstances of the pre-shift, on-duty period, and whether that time is compensable. Those questions will also control the claims by the proposed class. Accordingly, the proposed class meets the typicality requirement.

### *e. Adequacy*

To establish adequacy, the plaintiffs must prove that both the representative parties and class counsel will fairly and adequately protect the interests of the class. *Soutter v. Equifax Info. Servs., LLC*, 307 F.R.D. 183, 212 (E.D. Va. 2015) (citing Fed. R. Civ. P. 23(a)(4), (g)(4)). As explained above, the named plaintiffs here "possess the same interest and suffer the same injury" as the proposed class members. *Broussard*, 155 F.3d at 338 (quoting *E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)).[3] Additionally, plaintiffs' counsel has invested significant time and resources into researching the proposed class. Plaintiffs' counsel also has experience in class actions and overtime claims specifically. The representative parties and their counsel can fairly and adequately protect the proposed class's interests, so the plaintiffs have met the adequacy requirement.

---

[3] *See also Amchem Prods.*, 521 U.S. at 626 n.20 ("The adequacy-of-representation requirement 'tend[s] to merge' with the commonality and typicality criteria of Rule 23(a)" because they look at whether a class action is "economical" and "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.").

*f. Superiority*

Finally, the plaintiffs must demonstrate that proceeding as a class "is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "In determining whether the class mechanism is truly superior, the court should consider '(1) the interest in controlling individual prosecutions; (2) the existence of other related litigation; (3) the desirability of concentrating the litigation in the forum; and (4) manageability.'" *Soutter*, 307 F.R.D. at 217-18 (quoting *Hewlett v. Premier Salons Int'l, Inc.*, 185 F.R.D. 211, 220 (D. Md. 1997); Fed. R. Civ. P. 23(b)(3)). Phrased more generally, the superiority requirement compares class action litigation to possible alternatives "to determine whether Rule 23 is sufficiently effective to justify the expenditure of the judicial time and energy that is necessary to adjudicate a class action and to assume the risk of prejudice to the rights of those who are not directly before the court." *Stillmock*, 385 F. App'x at 274 (internal quotation and citation omitted).

The plaintiffs note that "no other lawsuits are currently pending against [the County] contesting the legality of the effect(s) of the compensation and operational practices at issue," which supports a finding of superiority under the first and second factors. (ECF No. 45, at 18–19.) Moreover, the controversy "is essentially 100% confined to the parties and facts involving Hanover County." (*Id.* at 19.) Because these factors demonstrate the superiority of a class action, the plaintiffs have met this final requirement for class certification. Accordingly, the Court will grant class certification on the state-law claims.

### B. Conditional Certification for FLSA Claim

A plaintiff alleging a FLSA violation can file a collective-action suit "for and in behalf of himself . . . and other employees similarly situated." 29 U.S.C. § 216(b). To achieve conditional certification of the FLSA collective action, a plaintiff at this early stage of the litigation need only

show that "notice [to potential class members] is 'appropriate.'" *Purdham v. Fairfax Cnty. Pub. Schs.*, 629 F. Supp. 2d 544, 547–48 (E.D. Va. 2009) (quoting *D'Anna v. M/A–COM, Inc.*, 903 F. Supp. 889, 894 (D. Md. 1995)). To do so, the plaintiff must establish that the "facts and circumstances of the case illustrate that a class of 'similarly situated' aggrieved employees exists." *Id.* at 547–48 (cleaned up) (quoting *Hoffman–La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989)). To make this showing, the plaintiff must provide "some factual evidence" rather than "mere allegations." *Id.* at 548 (quoting *Bernard v. Household Int'l, Inc.*, 231 F. Supp. 2d 433, 435 (E.D. Va. 2002)). That burden "is not onerous, but it is also not invisible." *Id.* (quoting *Parker v. Rowland Express, Inc.*, 492 F. Supp. 2d 1159, 1164 (D. Minn. 2007)). If the court finds that the plaintiffs have made this "modest factual showing," the court "conditionally certifies the class and potential class members can then" opt in as plaintiffs. *Id.* at 547–48 (internal quotation marks omitted) (first quoting *Choimbol v. Fairfield Resorts, Inc.*, 475 F. Supp. 2d 557, 563 (E.D. Va. 2006); and then quoting *Parker*, 492 F. Supp. 2d at 1164).[4]

The plaintiffs have submitted declarations that they argue show enough similarities among the putative collective to grant conditional certification. Those declarations establish that deputies "were required to mark on and be on duty prior to the start of their scheduled shift" as part of a "regular, consistent, and established practice," and that they did not receive overtime pay for that period of time. (*See* ECF No. 45, at 26.)

Hanover County argues that it is not the plaintiffs' employer and thus the plaintiffs have not shown that the County has a "common policy or plan" that violates FLSA. (ECF No. 48, at

---

[4] Once "discovery is virtually complete," the defendant may file a motion for decertification of the FLSA collective action, and the court will "apply a heightened, fact-specific standard to the 'similarly situated' analysis" to determine whether the "plaintiffs are not sufficiently 'similarly situated.'" *Houston v. URS Corp.*, 591 F. Supp. 2d 827, 832 (E.D. Va. 2008).

16 (quoting *Chapman v. Saber Healthcare Grp., LLC*, 623 F. Supp. 3d 664, 672 (E.D. Va. 2022)).) Moreover, the County insists that "the Sheriff does not have a policy regarding when a deputy must mark 'on' nor is there a consistent practice." (*Id.* at 17.) Thus, the Court would have to conduct "individualized assessment[s] of each potential opt-in plaintiff and the unit in which that plaintiff was employed" before deciding whether the opt-in plaintiff is similarly situated to the named plaintiffs. (*Id.*)

The County has essentially rehashed its arguments from the motion-to-dismiss stage and asserted that the plaintiffs' descriptions of the mark-on procedure and policy are inaccurate. But the Court has already concluded that the plaintiffs have sufficiently alleged that the County acts as the deputies' joint employer, and the Court cannot address fundamental factual disputes at this early stage in the litigation. *See Essame v. SSC Laurel Operating Co. LLC*, 847 F. Supp. 2d 821, 825 (D. Md. 2012) ("[C]redibility determinations are usually inappropriate for the question of conditional certification [in a FLSA suit.]"); *Jonathan R. v. Justice*, 344 F.R.D. 294, 303 (S.D.W. Va. 2023) (noting that while a "court must conduct a 'rigorous analysis' of the facts and arguments" for class certification, it cannot "engage in free-ranging merits inquires at the certification stage" (first quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011); and then quoting *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013))).

At this stage, the plaintiffs have sufficiently established for the purpose of conditional certification that the deputies received training on when and how to mark on duty, and that the mark-on-duty requirement applied broadly to deputies who drove to work in assigned police cars. Accordingly, they have made the "modest factual showing" to justify conditional certification. *Purdham*, 629 F. Supp. 2d at 548 (quoting *Choimbol*, 475 F. Supp. 2d at 563).

## III. CONCLUSION

The plaintiffs have met all the relevant requirements under Rule 23 for class certification, and they have similarly made the requisite showing to justify conditional certification for their FLSA claim. Accordingly, the Court will grant the plaintiffs' certification motion, certify the proposed Rule 23 class, and conditionally certify the FLSA collective action.

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 10 July 2024
Richmond, VA

/s/
John A. Gibney, Jr.
Senior United States District Judge

13