DEFENDANT'S
EXHIBIT
**2**_____

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

- - - - - - - - - - - - - - - - - x

CHRISTOPHER HATCHER                    :

individually on behalf of himself,:

and on behalf of all others       :

similarly situated,               :

          Plaintiffs,             : CASE NO.

     vs.                          : 3:23-cv-00325-MHL

COUNTY OF HANOVER, VIRGINIA,       :

          Defendant.               :

- - - - - - - - - - - - - - - - - x


                Deposition of SHELLY WRIGHT

                 Glen Allen, Virginia

              Wednesday, January 15, 2025

                      12:50 p.m.

**COPY**

Pages:  1 - 94

Reported by:  Sarah M. Bickel

**Chandler and Halasz Stenographic Reporters**
**(804) 730-1222**

A    I attended a pre-deposition meeting with counsel.

Q    Was it just one meeting?

A    From receiving this, yes.

Q    So from the time that you found out you were going to be responding on behalf of the county, you attended one meeting; is that correct?

A    Yes.

Q    So are you aware of any unwritten agreements between the county and sheriff as to pay benefits and human resources administration of HCSO deputies?

A    Yes.

Q    And what are those agreements?

A    I would say it falls under the answer of unwritten agreements.  It's our general agreement with all of our constitutional officers with regard to utilizing our centralized services.  So, for example, human resources would be one, payroll would be another that's under the finance office, not HR, other financial arrangements.  So those -- I'm not aware that that use of centralized services is in any form of a written agreement, so I would presume it's considered an unwritten agreement.

Q    Would it be fair to call it an unwritten

Page 12

arrangement?

A   I think that's fair.

Q   I mean, are there specific terms to the unwritten agreement?

A   No.

Q   Do you know when the unwritten agreement or unwritten arrangement between the county and sheriff came into effect?

A   I do not.

Q   Did it predate your coming on to work with the county?

A   It did.

Q   Do you know specifically what aspects of a deputy's employment are covered by the unwritten agreement?

A   I'm not sure that I'm -- that I fully understand when you say their employment.

Q   Sure.

A   I'm sorry.

Q   Okay.  Is deputy pay a part of the unwritten agreement?

A   The process -- I would say that it's -- I think my difference in terminology would be in terms of it's the process that is the unwritten agreement. How we process the payroll for a deputy or for anyone

A   Yes.

Q   Just make sure you don't walk away with those.  By the way, I should have said it before. Your counsel may object at times.  I would ask that you let her finish her objection before you answer, but unless she has not instructed you -- unless she has instructed you not to answer, I would ask that you go ahead and answer the question after she's finished with her objection.  Does that sound good?

A   Yes.

Q   Great.  Are the benefits or the employment benefits available to deputies, are those part of the unwritten agreement between the county and the sheriff?

A   I know the answer to your question.  I'm trying to think how to answer it thoroughly.  The benefits are part of what the sheriff has opted into for our county-wide -- again, our centralized services, but in terms of -- framing that in terms of that being an unwritten agreement, I guess I would have to say that the sheriff's participation is part of the unwritten arrangement, but the benefits are clearly defined and written.

Q   Understood.  The benefits are written, but the availability of those benefits to sheriff's

A   The ones that are for -- that the sheriff gives out, that's not part of the county -- that's not part of our agreement because that is unique to his office.

Q   Understood.  What about the actual work being done by the county deputies -- excuse me, the sheriff's deputies, the Hanover County sheriff's deputies, is that part of the unwritten agreement?

A   Not to my knowledge.

Q   The sheriff's deputies' participation in the county's dispatch services, is that part of the unwritten agreement?

A   I'm not sure I'm qualified to answer that.

Q   Okay.  That's fine.  If you don't -- whether or not you're qualified, do you have an answer?

A   No.  No.

Q   Does the unwritten agreement have any role in the HCSO -- Hanover County Sheriff's Office, does it have any role in the HCSO budget?

A   Yes.

Q   What role is that?

A   I would say that's part of the centralized services from finance department.

Q   Does the unwritten agreement guarantee the

budget requested?

A   No, it does not.

Q   Does it guarantee any specific level of funding?

A   No, it does not.

Q   Does it guarantee any funding?

A   No, it does not.

Q   Do you know whether or not the unwritten agreement has ever changed?

A   It has not, to my knowledge.

Q   And what other entities, I might argue departments, does the unwritten agreement apply to?

A   It would apply to all of our constitutional officers, it would apply to the schools, the Pamunkey Regional Jail, and the Pamunkey Regional Library.

Q   Are there separate unwritten agreements or is there just one unwritten agreement?

A   There are differences amongst the use of the sheriff's services between, say, the schools due to -- you know, some of that is not necessarily unwritten, some of that is defined by code as to what our relationship is, but our use of the centralized services can be different for them depending on which service we're talking about.  For instance, we do not

provide budget as a shared -- I do not prepare the budget, we're not responsible for that as part of the shared service with the schools.  I don't provide it for the library or the jail, but we do provide it for the county, including all of our constitutional officers who have opted in.

Q  Is part of the unwritten agreement an agreement -- or an arrangement wherein the county pays the sheriff's deputies?

A  Can you say that again?

Q  Sure.  Is part of the unwritten agreement where the county is the one to directly pay the sheriff's deputies?

A  To process the payroll, yes.

Q  But that payroll, those funds come out of the county's funds; is that correct?

A  Yes.

Q  It comes out of a fund or an amount that is allocated to the sheriff, but it is the county's funds; is that correct?

A  Yes, in addition to there is some smaller level of funding from the state as well.

Q  Does the sheriff pay anyone anything? Excuse me, that's a bad question, poorly phrased.

Does the sheriff pay any deputies

Wells Fargo.

Q   Is that in sort of just like a standard interest-bearing account?

A   I'm not certain.  I don't know standard. It is in an interest-bearing account.

Q   Does the interest earned on that account work to the benefit of the county?

A   Yes.

Q   So when the sheriff incurs a bill or a financial obligation, is the county the one that pays that financial obligation?

A   If the sheriff's office receives an invoice, then the sheriff's office, some of their -- I believe it's their civilian personnel enters that into what we call Financial Enterprise.  That's the county-wide software.  And then it is approved by someone else in the sheriff's office administration, and then it's sent over through -- within the system to have the -- either the check cut or the wire done.

Q   By the county?

A   Correct.

Q   So the county is the ultimate payor?

A   Correct.

Q   In your experience each year -- strike that.

Page 42

treasurer does utilize services for portfolio planning and long-term planning, things of that nature, but ultimately the treasurer is the official keeper of the depository account.

Q  Okay.  Do you know whether or not that account is invested?  Is that money invested in anything or is it just a simple interest-bearing account?

A  It is invested in a portfolio.

Q  Okay.

A  So there are some long-term investments, there are obviously some short-term investments to manage liquidity, and there are some that are our normal turnover where we pay payroll and things of that nature.

Q  But the money is hopefully doing better than like a -- the idea is not for it to be in like a 1 percent savings account?

A  Correct.

Q  Okay.  The personal property used by the HCSO -- and by personal property, I essentially mean, you know, computers, vehicles, et cetera, et cetera, used by the HCSO, are those owned by the county?

A  Yes.

Q  And that's all of it, all the vehicles,

Page 45

A   I believe that is through the Virginia Retirement System.

Q   But is that offered through the county's benefit of suites or is that done exclusively by the sheriff for them?

A   I believe it's offered directly from the Virginia Retirement System.

Q   I guess same question with respect to -- well, what about liability coverage, is that -- who does that come from?

A   The county -- again, part of the unwritten agreement, they are part of our centralized insurance policies.  So the county has the policy for the property, for the general liability, workers' compensation, things of that nature.  We negotiate those as a -- for the entire group.

Q   And I'm not asking because I imagine you haven't read the policy or memorized it, but to the best of your knowledge, Hanover County sheriff's deputies are covered persons under the liability policy?

A   Yes.

Q   I don't need to go back through the benefits suite, but like are there any insurance benefits available to county employees that are not

Page 91

operating account?

    A   Yes, it's -- that's generally what it is. It's everything that's not those other things.

    Q   Okay.

    A   It's where your taxes get recorded.

    Q   And then you were asked several times today about certain things for the sheriff, things that come to mind, vehicle maintenance, software systems, property, things of that nature, and whether it was paid for by the county.  When you said it was paid for by the county, does that mean it's paid for with the sheriff's budget allocation?

    A   Yes.

    Q   But ultimately the county is the payor?

    A   Correct.

    Q   But the sheriff needs to have the money allocated in his budget for that expense to be paid?

    A   Correct.

    MS. YORK:  Those are all the questions that I have.

    MR. ANTELL:  I don't have anything else.

    (Signature having not been waived, the deposition of SHELLY WRIGHT concluded at 2:56 p.m.)