DEFENDANT'S
EXHIBIT
21

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

CHRISTOPHER HATCHER, and
JONATHAN MCGILL
individually on behalf of themselves,
and on behalf of others similarly situated,

       Plaintiffs,

v.

THE COUNTY OF HANOVER, VIRGINIA,

       Defendant.

Case No. 3:23-cv-325-JAG

**PLAINTIFFS' ANSWERS TO DEFENDANT'S SECOND
INTERROGATORIES AND RESPONSES TO
DEFENDANT'S SECOND REQUESTS FOR
PRODUCTION OF DOCUMENTS**

COMES NOW, Plaintiffs Christopher Hatcher, Matthew Dodge, Steve DiLoreto, Benjamin Carroll, Timothy Sutton, Jonathan McGill, Lowell Lantz, Christopher Payne (collectively "Plaintiffs"), by counsel, responds the following Interrogatories and Requests for Production of Documents propounded by the Defendant as follows:

### GENERAL OBJECTIONS

1.    Plaintiffs object to each Interrogatory/Request that seeks information subject to the attorney-client privilege, constituting attorney work product, or that is confidential or proprietary in nature.

2.    Plaintiffs object to each Interrogatory/Request that fails to provide a relevant time period for the Request on the ground that such failure makes the Interrogatory/Request vague, overbroad, and unduly burdensome and seeks information which is irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence.

1

3.      Plaintiffs object to each Interrogatory/Request to the extent it seeks to impose obligations and/or burdens on Plaintiff beyond what is required by state law, the Federal Rules of Civil Procedure, and the scheduling order in this case.

4.      Plaintiffs object to each Interrogatory/Request that fails to provide a geographic limitation for the Interrogatory/Request on the ground that such failure makes the Interrogatory/Request vague, overbroad, and unduly burdensome and seeks information which is irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence.

5.      Plaintiffs object to each Interrogatory/Request which includes the broad terms "every", "each", "any", and "all" because such terms are overly broad on their face, and it is impossible to represent, even after a diligent search, that "every", "each", "any", and "all" information possibly responsive to an Interrogatory/Request directed to Plaintiffs. Plaintiffs' responses are based upon a reasonable investigation conducted by, and information presently in the possession, custody, or control of, Plaintiff.

6.      Plaintiffs' investigation and discovery continues. Plaintiffs expressly reserve the right to supplement their responses as additional information becomes known and additional materials are discovered Any information furnished in response to Defendant's Interrogatories/Requests is furnished subject to these General Objections and Responses as well as the specific objections set forth below, and each <u>Plaintiffs retain the right to rely at trial on other supplemental information which s/he may discover after the date of this Response</u>.

7.      Plaintiffs' counsel is prepared to confer with Defendant's counsel in an attempt to resolve any general or specific objections to Defendant's Requests.

8.      Plaintiffs incorporate these General Objections and Responses into each response that follows.

## INTERROGATORIES

1.     State your full name, any other names by which you may have been known, your date of birth, and your present residence address.

**ANSWER:**     **Christopher Carl Hatcher**
**Chris Hatcher**
███████████

███████████████████████████

**Jonathan David McGill**
███████████

███████████████████████████

**Timothy Wayne Sutton**
**Sgt. Tim W. Sutton**
███████████

██████████████████████

**Christopher Ryan Payne**
**Ryan Payne**
███████████

██████████████████████████

**Lowell Wade Lantz**
███████████

█████████████████████████

**Matthew Dodge**
███████████

██████████████████████████

**Steve DiLoreto**
█████████████████████

███████████████████████████████

**Benjamin Waverly Carroll**
**Waverly Carroll**
███████████

██████████████████████████

2.     State where you or the defendant made any statement concerning the claims which are the subject of this suit.  If so, for each such statement, please identify the person giving the statement, the date and time the statement was made or given, the identity of the person to whom

3

the statement was made or given, whether the statement was recorded, transcribed, or signed by the person making or giving the statement, and the substance of such statement.

**OBJECTION: In addition to the General Objections listed above, this Interrogatory is objected to as unduly burdensome insofar as it seeks discovery of information more or equally available to Defendant.**

**ANSWER:     Subject to the above objections:**

**Chris Hatcher: I have had conversations with Co-Plaintiffs and J. Kirk Shaffier (804-839-1413). See text threads produced.**

**Timothy Sutton: None**

**Ryan Payne: I have had a conversation with my Co-Plaintiff. See text threads produced.**

**Lowell Lantz: Verbal conversations with Co-Plaintiffs.**

**Matthew Dodge: I have had a conversation with my Co-Plaintiff. See text threads produced.**

**Steve DiLoreto: will supplement.**

**Benjamin Carroll: None to my knowledge.**

**Jonathan McGill: I have had a conversation with my Co-Plaintiff. See text threads produced.**

3.      State whether you or the defendant made any statement concerning the claims which are the subject of this suit.  If so, for each such statement, please identify the person giving the person giving the statement, the date and time the statement was made or given, the identity of the person whom the statement was made or given, whether the statement was recorded, transcribed, or signed by the person making or giving the statement, and the substance of such statement.

**OBJECTION: In addition to the General Objections listed above, this Interrogatory is objected to as**

4

**unduly burdensome insofar as it seeks discovery of information more or equally available to Defendant.**

**ANSWER:    Subject to the above objections:**

**Chris Hatcher: See answer to Interrogatory #2.**

**Jonathan McGill: See answer to Interrogatory #2.**

**Timothy Sutton: See answer to Interrogatory #2.**

**Ryan Payne: See answer to Interrogatory #2.**

**Lowell Lantz: See answer to Interrogatory #2.**

**Matthew Dodge: See answer to Interrogatory #2.**

**Steve DiLoreto: will supplement.**

**Benjamin Carroll: See answer to Interrogatory #2.**

4.      For each expert witness you intend to call at trial, please provide such expert's qualifications, the subject matter in which such expert is expected to testify, the substance of the facts and opinions to which such expert is expected to testify, and a summary of the grounds for each opinion.

**ANSWER: None. Plaintiffs will supplement if they retain an expert.**

5.      State whether you have ever been a party to any other lawsuit or workers compensation proceeding.  If so, with respect to each such other lawsuit or workers compensation proceeding state the name and address of the court or other forum where the lawsuit was filed, the caption and date of filing, the nature of the injury forming the basis for your claim, and the disposition of the lawsuit or workers compensation proceeding including the dollar amount of any verdict, decree or settlement which you obtained.

**OBJECTION:** In addition to the General Objections listed above, Plaintiffs object to this Interrogatory on the grounds that seeks documents and/or information that are not relevant to any party's claim or defense and are not necessary to a full and fair exploration of the issues in dispute.

**ANSWER:**    Subject to the above objections:

**Chris Hatcher: None**

**Jonathan McGill: None**

**Timothy Sutton: None**

**Matthew Dodge: None**

**Lowell Lantz: None**

**Ryan Payne: Current defamation lawsuit in Richmond Circuit Court. Previous lawsuit against Hanover County Sheriff's Office, 2024, EDVA, charges were dismissed against HCSO on basis of qualified immunity**

**Steve DiLoreto: will supplement.**

**Benjamin Carroll: None.**

6.    State all facts that support your claim that current or former Hanover County Sheriff's Deputies who were issued take-home patrol cars, were required to "mark on duty" as soon as they began driving or upon leaving their homes in their patrol vehicle prior to the beginning of their scheduled work shifts.

**ANSWER:**

**Chris Hatcher: Marking on duty from your patrol car, before leaving your home, has been the practice dating back in my employment from 2002 through the end of my employment. It was also the practice of the Street Crimes Unit to mark on when leaving your residence.**

6

**Jonathan McGill: Marking on duty from your patrol car was part of training and common practice by Sheriff's deputies.**

**Timothy Sutton: Marking on duty from your patrol car was the general practice by Sheriff's deputies.**

**Ryan Payne: It was taught in the Hanover County Criminal Justice Academy that we "mark on", or notify dispatch, that we were available as soon as the workday started in that training environment. Once I graduated from the Academy, I was issued a take-home vehicle. I was informed at the time by my field training officer to mark "on duty" with dispatch, either via police radio, or by placing a phone call to dispatch, that I was "on duty" prior to driving to headquarters for roll call or directly to my assigned work zone. I continued this practice for the duration of my employment from 2015 through December 2021, at which time my employment with HCSO ended.**

**Lowell Lantz: Marking on duty from my patrol car was based on training -through the training division, Field Training Officer and First line supervisors - and experience, and ingrained in every recruit / deputy from day one of employment that officers in uniform, displaying a badge of authority, operating a marked police patrol vehicle, are obligated to act in the safety of public interest. Based on all trainings, I marked on-duty in my driveway prior to leaving my residence at the start of shift. I marked on-duty and off-duty utilizing the same process each day of my employment with the Hanover County Sheriff's Office.**

**Matt Dodge: When I began working at the Sheriff's Office, I was instructed to mark on duty from my driveway (I lived in Caroline County). I marked on duty over the radio or on my laptop if it had enough signal, as soon as I got in my car to head to work, even though we were not paid for that time. As time went on, a supervisor told me not to mark on duty until I arrived at the county line.**

**Steve DiLoreto: Plaintiffs will supplement.**

**Benjamin Carroll: Marking on duty from my patrol car was based on directions from training and supervisors and was part of the standard operating procedures at the Sheriff's office.**

7.    Identify each and every instance when you "marked on duty" prior to your scheduled work shift, and for each such instance, identify any law enforcement action you took.

**OBJECTION: In addition to the General Objections listed above, Plaintiffs object to the use of "each and every instance".**

**ANSWER:    Subject to the above objections:**

**Chris Hatcher: Every day I was scheduled to work. Marking on duty is a law enforcement action, which informs dispatch I'm within the jurisdiction, in my patrol car, and that I am present and patrolling while on the way.**

**Jonathan McGill: Every day I was scheduled to work. Marking on duty is a law enforcement action, which informs dispatch I'm within the jurisdiction, in my patrol car, and that I am present and patrolling while on the way.**

**Timothy Sutton: Every day I was scheduled to work. Marking on duty is a law enforcement action, which informs dispatch I'm within the jurisdiction, in my patrol car, and that I am present and patrolling while on the way.**

**Ryan Payne: Every day I was scheduled to work. Marking on duty is a law enforcement action, which informs dispatch I'm within the jurisdiction, in my patrol car, and that I am present and patrolling while on the way.**

**Lowell Lantz: Every day I was scheduled to work. Marking on duty is a law enforcement action, which informs dispatch I'm within the jurisdiction, in my patrol car, and that I am present and patrolling while on the way.  I marked on duty by either by radio or computer.**

**Matt Dodge: Every day I was scheduled to work. Sometimes at the county line, sometimes in the parking lot about 10-15 minutes before start of shift. Marking on duty is a law enforcement action, which informs dispatch I'm within the jurisdiction, in my patrol car, and that I am present and patrolling. I will note that I generally worked in the Western end of the County where the cell signal for the internet card in my work laptop would cut out. Losing signal would cause me to be logged off on my MDT and I would have to log back in. This in essence would mark me off  duty and then back on duty. This was a normal occurrence throughout my time employed.**

**Steve DiLoreto: Plaintiffs will supplement.**

**Benjamin Carroll: Every day I was scheduled to work. Marking on duty is a law enforcement action, which informs dispatch I'm within the jurisdiction, in my patrol car, and that I am present and patrolling while on the way.**

8.      Identify each and every instance when you "marked on duty" after your scheduled work shift, and for each such instance, identify any law enforcement action you took.

**OBJECTION: In addition to the General Objections listed above, Plaintiffs object to the use of "each and every instance". Further, Plaintiffs object to this Interrogatory on the grounds that it seeks discovery of information more or equally available to Defendant.**

**ANSWER:    Subject to the above objections:**

**Chris Hatcher: I don't recall any instance.**

**Jonathan McGill: I don't recall any instance.**

**Timothy Sutton: I don't recall any instance.**

**Ryan Payne: I do not recall "marking on duty" after my scheduled shift.**

**Lowell Lantz: I don't recall any instance.**

**Matt Dodge: I don't recall any instance.**

**Steve DiLoreto: Plaintiffs will supplement.**

**Benjamin Carroll: I don't recall any instance.**

9.    For each instance in which you "marked on duty," state whether you submitted a request for any compensation or overtime.

**OBJECTION: In addition to the General Objections listed above, Plaintiffs object to the use of "each and every instance". Further, Plaintiffs object to this Interrogatory on the grounds that it seeks discovery of information more or equally available to Defendant.**

**ANSWER:    Subject to the above objections:**

**Chris Hatcher: I don't recall any.**

**Jonathan McGill: I don't recall any.**

**Timothy Sutton: I don't recall any.**

**Ryan Payne:  I don't recall any.**

**Lowell Lantz: I don't recall any.**

**Matt Dodge:  I don't recall any.**

**Steve DiLoreto: Plaintiffs will supplement.**

**Benjamin Carroll: I don't recall any.**

10.    Identify the amount of "unpaid wage and overtime compensation" that you claim is owed to you, as alleged in the Complaint.

**OBJECTION: In addition to the General Objections listed above, Plaintiffs object to this Interrogatory to the extent it relies on production of information from Defendant and/or third parties.**

**ANSWER:    Subject to the Objection above, Plaintiffs' counsel will supplement based on data productions. Also, refer to Plaintiffs' initial disclosures.**

11.    Identify any and all evidence that supports your claim for damages in this lawsuit.

**OBJECTION: In addition to the General Objections listed above, Plaintiffs object to the use of "any and all".**

**ANSWER:    Subject to the above objections:**

**Chris Hatcher: Marking on was made through the use of "SCU 1" channel, as we did not mark off. We were dismissed 30-45 minutes before end of shift by supervision and drove home. Marking on was an expected practice to notify you were on duty. See answers above.**

**Jonathan McGill: Being instructed to mark on duty before the beginning of each shift. See answers above.**

**Timothy Sutton: See answers above.**

**Ryan Payne: See answers above.**

**Lowell Lantz: I was hired by the Hanover County Sheriff's Office in July of 1999. I completed the training academy in December of 1999. The training process to become a Hanover County Deputy begins on day one. The department's Standard Operating Procedures dictate a deputy has a moral, ethical, and legal obligation to act in the safety of**

**public interest while in a uniformed capacity. If a Hanover deputy is off-duty and observes a crime in progress, such deputy is to notify on-duty law enforcement and be the best witness possible and not directly act, unless there is an immediate threat to loss of life. Based on all trainings, being in full police uniform, displaying a badge of authority for the Commonwealth of Virginia, and operating a marked patrol vehicle, I marked on-duty by police radio to Hanover County Department of Emergency Communications via department installed Motorola police radio. I marked on-duty in my driveway prior to leaving my residence at the start of shift. These processes were instilled through the training division, Field Training Officer and First line supervisor due to Officer Safety standards. See answers above.**

**Matt Dodge: See answers above. When I marked on duty from the parking lot before my shift I would then check emails and fuel up the patrol car.**

**Steve DiLoreto: Plaintiffs will supplement.**

**Benjamin Carroll: See answers above.**

## REQUESTS FOR PRODUCTION

1.     All documents reviewed or relied on in preparation of, or identified in, your Answers to Interrogatories.

**RESPONSE: Plaintiffs have no responsive documents.**

2.     All documents related to this litigation obtained from any party or non-party that were produced voluntarily or pursuant to a subpoena *duces tecum* or in response to a request under the Freedom of Information Act.

**RESPONSE:  See BATES HAT0000001-2271.**

3.     Any statements---audio, written or however memorialized---taken from any person with knowledge of the events alleged in the Complaint.

**RESPONSE:**

**Chris Hatcher: See BATES HAT00002272-2273.**

**Timothy Sutton: It was generally accepted practice that officers marked on duty as soon as they left their residence.**

**Ryan Payne: Conversation with Co-Plaintiff McGill. See BATES HAT00002274-2276.**

11